(Decided 19th December, 1884.)

---

THE CONSOLIDATED GAS COMPANY OF BALTIMORE *vs.* THE MAYOR AND CITY COUNCIL OF BALTIMORE.

*Taxation—Gasometers and Gas mains—Machinery for Manufacturing purposes—Construction of Ordinance No. 7, 1881, of the Mayor and City Council of Baltimove, exempting Machinery for Manufacturing purposes from Taxation.*

Ordinance No. 7, of 1881, passed by the Mayor and City Council of Baltimore, in pursuance of the Acts of 1880, chapters 187 and 235, provides, "that any mechanical tools or implements, whether worked by hand or by steam, or other motive power, machinery, manufacturing apparatus, or engines owned by any individual, firm or corporation in said city, and properly subject to valuation and taxation therein, which said tools, implements, machinery,

apparatus or engines shall be actually employed and used in the business of manufacturing in said city," shall be exempt from taxation. HELD:

That the *gasometers* and *gas mains* or *pipes* belonging to a gas company, do not constitute part of the machinery, actually employed and used by the company in the manufacture of gas, and are not under said ordinance exempt from taxation.

APPEAL from the Circuit Court of Baltimore City.

The bill of complaint in this case was filed by the appellant against the appellee, asking for an injunction to restrain the appellee from enforcing the payment af a tax assessed upon the gasometers and gas mains or pipes of the appellant, and from assessing and taxing said property as though the same were in fact assessable and taxable as real estate. After answer filed and testimony taken, the Court (FISHER, J.) passed a decree refusing the injunction and dismissing the bill. From this decree the present appeal was taken. The case is further stated in the opinion of this Court.

The cause was argued before ALVEY, C. J., MILLER, ROBINSON, and BRYAN, J.

*N. Penniman Bond,* and *Robert D. Morrison,* for the appellant.

*James L. McLane,* for the appellee.

ROBINSON, J., delivered the opinion of the Court.

Ordinance No. 7, 1881, passed by the Mayor and City Council of Baltimore, in pursuance of the Acts of 1880, chapters 187 and 235, provides, "that any mechanical tools or implements, whether worked by hand or by steam or other motive power, machinery, manufacturing apparatus, or engines, owned by any individual, firm or corporation in said city, and properly subject to valuation and taxation

therein, which said tools, implements, machinery, apparatus or engines, shall be actually employed and used in the business of manufacturing in said city," shall be exempt from taxation.

The appellant was incorporated under the laws of this State, for the purpose of manufacturing illuminating gas in Baltimore City.

The question in this appeal, is whether the *gasometers* and *gas mains* or *pipes* belonging to the Company are, under the above ordinance, exempt from taxation? And this depends upon whether they constituted *part of the machinery actually used by it in the manufacture of gas?*— the language of the ordinance, being "any machinery, etc., actually employed and used in the business of manufacturing."

The process of manufacturing gas is, according to the testimony, as follows: The coal is put in air-tight *retorts* and heated to a temperature sufficient to drive off the volatile matter, which, in fact, contains everything to be found in illuminating gas, the *residuum* in the retort being coke. This *volatile matter* or *gas* then passes into a *condenser* of a lower temperature, to free it from the tar which is present with the gas;—it then goes into what is called a *scrubber*, by which the ammonia is washed out in the form of ammoniacal liquor; thence it is drawn by an *exhauster*, driven by a steam engine, through *purifiers* over slacked lime, and thus freed of all impurities. It then passes through the *station metres* for the purpose of ascertaining the quantity produced; thence to the *gasometer* and then through the *mains* or *service pipes* to the house of the consumer.

*The gasometer* is a huge, air-tight reservoir for the storage of the gas thus produced, and the pressure which is necessary to force the gas through the mains to the consumer. The pressure is generated by the *exhauster*, which forces the gas through the purifiers into the gasometer.

The gasometer being automatic, it rises or falls according to the supply and consumption of gas, the pressure which is communicated to it by the exhauster being regulated and modified by what is called a *governor* inside of the gasometer.

The gas when it passes into the gasometer is ready for illumination, and all that is required to make it available for use, is pressure sufficient to force it through the mains and pipes to the house of the consumer, then coming into contact with the oxygen in the air, it becomes when lighted, an illuminating gas. This pressure is furnished, as we have said, by the *exhauster*, communicated to the gasometer and regulated according to the supply and consumption by the *governor*.

If this be so, then it is clear the gasometer performs no function whatever in the manufacture of the gas itself. It is used merely for the storage of the gas, and the pressure necessary for its distribution.

We do not understand the decision in *Commonwealth vs. Lowell Gas Light Co.,* 12 *Allen,* 75, to be in conflict with this view. The statute in that case provided, that whenever the market value of all the shares of the capital stock of a corporation, shall exceed the value of its real estate and machinery, as returned by the assessors, such excess in value shall be liable to taxation. The question was whether the commissioners appointed to ascertain and fix the value of the capital stock, and to deduct therefrom, the real estate and machinery of a gas company, ought to have included in the valuation of the latter, the gasometer and mains, belonging to the company, and the Court decided, in that *sense,* and for that purpose, that is, for the purpose of ascertaining the value of its real estate and machinery, the gasometer and mains must be considered as part of the machinery. Whether "machinery" as used in its broadest and most comprehensive sense includes a *gasometer*, it is unnecessary to decide

in this case. Be that as it may, it is not part of the *machinery actually used* and *employed* in the *manufacture of the gas.*

For the same reasons the mains are not part of the manufacturing plant which is exempted by the city ordinance from taxation. They are merely pipes used for the purpose of distributing the gas and pressure to the point of illumination.

The question as to the power of the Legislature to authorize the city authorities to pass an ordinance *exempting the manufacturing plant* from taxation, was not argued in this case, and we are not to be understood as expressing any opinion in regard to this question.

For these reasons the decree will be affirmed.

*Decree affirmed.*

(Decided 19th December, 1884.)