H. M. ROWE COMPANY *v.* STATE TAX COMMISSION ET AL.

*Exemption From Taxation—"Manufacturing"—Publishing Business.*

The term "manufacture," as used in Acts 1914, ch. 528, and in Baltimore City ordinances passed under authority thereof, exempting from taxation tools, machinery, and apparatus used by persons, firms, or corporations, engaged in manufacturing, means the process of converting some material into a different form adapted to uses to which in its original form it could not be so readily applied. p. 258

A corporation is not to be regarded as engaged in manufacturing, for the purpose of an exemption from taxation, because it prepares or has prepared the manuscripts for text-books marketed by it, the books being printed, electrotyped, bound and delivered to it by independent contractors, and the only labor performed by the corporation in producing the finished work being clerical, literary, or intellectual. p. 259

A corporation selling, for the purpose of instruction in book-keeping, "budgets," consisting of printed sheets and forms, is not engaged in manufacturing because, after the directions and forms have been printed and delivered to it in a finished condition, it assembles them in proper order, and staples the four corners of the budgets together, using for that purpose machines valued at less than a thousand dollars.                          p. 259

Electrotype plates, made by independent contractors for a publishing company, and used, not by it in connection with any machinery owned by it, but only by independent contractors on their machinery, are not machinery used by it in manufacturing, for the purpose of an exemption from taxation.     p. 259

A company publishing text books, the mechanical labor for the production of which is for the most part done by others, is not a manufacturer merely because it composes and arranges the contents and form of the text-books, and the labor involved in their production is done by its orders and direction, and for it.                          p. 259

A publisher may be a manufacturer or not, accordingly as he does or does not manufacture the books, magazines, or other printed matter which he publishes.                          p. 260

In construing statutes exempting property from taxation, no presumption or intendment in favor of an exemption is to be made unless it is clearly warranted by the letter or the spirit of the statute.                          p. 261

*Decided December 9th, 1925.*

Appeal from the Baltimore City Court (ULMAN, J.).

Petition by the H. M. Rowe Company against William W. Beck and others, constituting the State Tax Commission, E. A. Hartman and others, constituting the Appeal Tax Court for Baltimore City, and the Mayor and City Council of Baltimore City, by way of appeal from an order of said State Tax Commission. From an order affirming said order, the H. M. Rowe Company appeals. Affirmed.

The cause was argued before BOND, C. J., URNER, AD-KINS, OFFUTT, DIGGES, and PARKE, JJ.

*J. LeRoy Hopkins,* for the appellant.

*Herbert Levy, Assistant Attorney General,* and *Paul F. Due, Assistant City Solicitor,* with whom were *Thomas H. Robinson* and *Philip B. Perlman, City Solicitor,* on the brief, for the appellee.

OFFUTT, J., delivered the opinion of the Court.

Acting under the authority conferred by chapter 528 of the Acts of 1914, on February 13th, 1915, the Mayor and City Council of Baltimore, by Ordinance No. 571, exempted from taxation all mechanical tools, whether worked by hand or steam or other motive power, and any machinery, manufacturing apparatus, or engines owned, as is required by said Act of 1914, chapter 528, and which are actually employed and used in the business of manufacturing in the city of Baltimore" owned by "persons, firms and corporations actually engaged in manufacturing within the City of Baltimore," who complied with the terms of said act by furnishing true statements and making returns of their personal property as required by it.

On March 6th, 1919, it passed Ordinance No. 462, which exempted from taxation for "all ordinary municipal purposes * * * all personal property of every description owned by any person, firm or corporation and used entirely or chiefly in connection with manufacturing in Baltimore City, including mechanical tools, or implements, whether worked by hand or steam or other motive power machinery, manufacturing apparatus or engines, raw material on hand, manufactured products in the hands of the manufacturer, bills receivable and business credits of every kind, due to the manufacturer, for goods manufactured in Baltimore City."

That ordinance also provided: "In case any person, firm or corporation engaged in manufacturing in Baltimore City shall also be engaged in the business of a jobber, or wholesaler or retail merchant, in Baltimore City, nothing in this ordinance shall be construed to exempt the personal prop-

erty, other than goods of his own manufacture, used in con-
nection with said business of jobber or wholesale or retail
merchant."

Having furnished the statements and returns required by
chapter 528 of the Acts of 1914 and the two ordinances, the
H. M. Rowe Company, a corporation, claiming to be en-
gaged in the business of manufacturing, made seasonable ap-
plication to the Appeal Tax Court of Baltimore City "for
the exemption from taxation for the year 1920 for ordinary
municipal purposes of certain property used in connection
with that business, valued at $76,507.22." The Appeal Tax
Court refused to allow the exemption, whereupon the appel-
lant appealed to the State Tax Commission for the purpose
of having it review and reverse the action of the Appeal Tax
Court. After a hearing the order appealed from was af-
firmed, and the appellant then filed its petition and appeal
in the Baltimore City Court against the State Tax Commis-
sion, the Appeal Tax Court, and the Mayor and City Coun-
cil of Baltimore, praying that the several acts of the Appeal
Tax Court and The State Tax Commission in respect to its
claim for exemption might be reviewed.

On May 5th, 1925, the matter was submitted to that court
for determination and on May 7th it affirmed the order of
the State Tax Commission, and from that order this appeal
was taken.

The only question presented by the appeal is whether the
business with respect to which the appellant claims exemp-
tion is a manufacturing business within the meaning of the
statute and the two ordinances referred to. The facts relat-
ing to that issue are not disputed and may be thus sum-
marized:

The "H. M. Rowe Company" was incorporated for "pub-
lishing, manufacturing, dealing in and selling of books, sta-
tionery and miscellaneous materials and supplies for office
and school purposes and to do whatever may be necessary
appertaining to the book, stationery and publishing business."
"Its principal office is in Baltimore City, and it maintains

offices in New York, Boston, Chicago, San Francisco and other large cities, and sells to schools and educational institutions miscellaneous and complete sets of text books, treatises, books of instructions, pamphlets, and practice forms for commercial courses of instruction in stenography, typewriting, bookkeeping, English, spelling, arithmetic, banking, commercial law, etc., and it also gets up, as hereinafter outlined, a monthly magazine known as the 'Budget,' which deals with educational matters. The company does not buy ready made any of the books, pamphlets, treatises, magazines, practice forms, or other articles which it sells. As to some of these articles, the manuscript is composed and written by the company itself and is then sent to a printer in typewritten form. The printer, who is an independent contractor, with a separate place of business, sets it up in type on galley sheets. It is then proof read, corrected, amended, and divided into pages by the appellant. It is then sent back to the printer, who rearranges the type and prints another proof in page form. This is again proof read, corrected and amended by the appellant. The make-up type of the manuscript in page form is then sent to an electrotyper, who is also an independent contractor, with a separate place of business, and he makes up electrotype plates, from which the pages of the book are printed. These pages, as to certain books, are then sent to a bindery, which is an independent contractor, with a separate place of business. The book is then copy-righted and is ready to be marketed."

It also makes and sells the "Rowe Budget Systems" of Bookkeeping, "there being three separate systems, all of which are copy-righted and owned by the appellant. Each of these bookkeeping systems is composed of a text book; anywhere from three to five printed 'budgets,' which are pads of printed pages and other printed sheets fastened at the four corners with brass staples and washers; anywhere from three to five sets of miniature blank books of account; anywhere from three to five packages of blank forms for checks, notes, drafts, bills, receipts and other business papers and

documents used in bookkeeping and accounting offices; and
anywhere from three to five sets of envelopes which repre-
sent files for the purpose of filing incoming business papers
such as are named above which are contained in the 'budget'
before mentioned after the student has recorded them in his
books of accounts. In addition to the budget systems of book-
keeping just described, the appellant makes up and markets
other case-bound text books on the subject of commercial
arithmetic, commercial law, shorthand, typewriting, business
English, rhetoric, spelling and kindred subjects; also, various
blank books and pieces of stationery that are used in com-
mercial and business schools, public and private. No print-
ing or electrotyping is done by the appellant, but all such
work required by the appellants is done by independent con-
tractors.

"The appellant assembles and fastens together its book-
keeping 'budgets' on its own premises. In the several book-
keeping systems named, there are 15 or 16 'budgets.' Each
'budget' contains from 100 to 150 printed sheets; between
these printed sheets are placed other loose printed sheets rep-
resenting business papers such as checks, notes, drafts, bills,
invoices etc. There are probably on an average of 200 such
printed sheets included between the instruction sheets in each
budget. The appellant sells approximately 175,000 of these
bookkeeping budgets a year. * * *

"The printed white instruction sheets and the incoming
business papers are placed in piles of 1,000 each in their
proper order on racks. The appellant's employees then pick
a sheet off each pile and place it in a tray which they hold
in the hand. When the employee makes a complete circle
around the rack, she will have gathered one complete budget.
Before the white instruction sheets are placed on the racks,
they are punched at the corners on a punching machine oper-
ated by an electric motor. * * * After a budget is gathered,
holes are punched in the four corners by a punching machine
operated by foot power, brass staples are inserted in these
holes, and the budget is then taken to another machine where·

by foot power a washer is fastened to the staple by a crushing or punching process which fastens the four corners of the budget tightly. The budgets are then ready for delivery and are placed in stock. The value of the appliances above described used in assembling and fastening the budget sheets together is approximately $750. * * * The electrotype plates constitute a valuable part of the assets of the appellant, and are used from time to time in making up new supplies of books in the manner above set forth." All the printing, electrotyping and binding required to produce the books and bookkeeping systems sold by the appellant is done by independent contractors in their respective plants and with their own tools and machinery and the only work of any kind performed by the appellant in connection with them is to furnish the manuscript, read, correct and amend the proof, supervise the printing and assemble the bookkeeping systems.

The appellant contends that this business, which (largely in the language of the agreed statement of facts) we have described with perhaps needless detail, is manufacturing, and in support of that contention its counsel has filed elaborate briefs prepared with commendable care and industry. We have examined and carefully considered the briefs and the cases cited, but are not able to reach the conclusion that the business which we have described is manufacturing within the meaning of the letter or the spirit of the statute and the ordinances referred to, regardless of whether they be strictly or liberally construed.

The purpose and intent of such statutes as those under consideration is to augment the wealth and prosperity of the state by inducing the establishment, expansion and development of industries which will produce by hand or mechanical labor, in commercial quantities, articles suitable or desirable for the necessities, comfort, convenience or pleasure of the public; afford employment to its own citizens, and attract others whose skill and industry will add to its wealth and resources.

"Manufacture" as used in those statutes is a plain word in every day use, and as ordinarily understood means the process of converting some material into a different form adapted to uses to which in its original form it could not be so readily applied, and is associated nearly always with the use of manual or mechanical energy, and it is not ordinarily used to describe the creation of products by labor entirely or mainly intellectual, literary, or clerical in character. It has an etymological meaning narrower than that, but general and immemorial usage has given it the broader meaning which we have stated. It has been held to describe the process of assembling articles which, while complete and finished, have no independent utility but are designed to be used in combination as parts of some other article, such as a typewriter, an automobile, or the like, but when so used the process of assembling usually, if not always, involves the exercise of manual or mechanical skill and labor and the more or less extensive use of auxiliary machinery, and this interpretation of the word is consistent with that given it by this Court in *Carlin v. Western Assurance Co.*, 57 Md. 526, where it is said: "But whilst, from its derivation, the primary meaning of the word 'manufacture' is making with the hand, this definition is too narrow for its present use. Its meaning has expanded as workmanship and art have advanced; so that now nearly all artificial products of human industry, nearly all such materials as have acquired changed conditions or new and specific combinations, whether from the direct action of the human hand, from chemical processes devised and directed by human skill, or by the employment of machinery, which after all is but a higher form of the simple implements with which the human hand fashioned its creations in ruder ages, are now commonly designated as 'manufactured,' " and is supported by the general weight of authority. *Bouvier's Law Dictionary,* 3; *Words and Phrases,* 2d Series, 279 *et seq.*

Applying it to the instant facts, it is not manifest how the appellant's business can be classified as manufacturing. The

case bound text books which it markets are printed, electro-
typed, bound, and delivered by independent contractors to
the appellant, and the only labor of any character performed
by it in producing the finished work is entirely clerical, lit-
erary, or intellectual. Its "budgets" are composed of printed
sheets and forms, which are delivered to it complete, finished
and ready to be assembled, and the only labor which is not
clerical, intellectual, or literary, which it does in connection
with their preparation, is that of assembling them in proper
order and sequence, and stapling the four corners of the bud-
gets together, and the only machinery used in connection
with that process is a stapling machine and a punching ma-
chine which together are valued at $750. And the only
other "machinery" it has, are the electrotype plates which
cannot be and are not used by the appellant in connection
with any machinery owned by it, but are only used by in-
dependent contractors on their machinery. The character of
the work thus done by the appellant in the course of its
business is much the same as that done in many professional
or business offices, such as those of lawyers, engineers, insur-
ance brokers and commission brokers, although it differs
from them in this, that with them the work is incidental to
their principal business, while here it constitutes the princi-
pal business, and the question occurs as to whether that dif-
ference can convert a business which obviously cannot be
called manufacturing into one which is. It cannot in our
opinion have that effect, for while if the work done were of
a character which would fall within the accepted definition
of the term "manufacturing," the fact that it is merely inci-
dental to another business could perhaps be relevant in deter-
mining whether that business should be classified as manu-
facturing, yet where it is not of that character, its mere
extent cannot make it so.

The appellant however contends that its products are man-
ufactured by it because it composes and arranges their con-
tents and form, and that while the mechanical labor or most
of it necessary to produce the finished product is done by

others, it is done by its orders and direction and for it, and that for that reason it is the real producer and is a manufacturer, and it crystallizes that contention in this formula, (1) that it is a publisher, and (2) that a publisher is a manufacturer. The vice of that contention is, that it is in the indicative instead of the subjunctive mood. A publisher may be a manufacturer or he may not, accordingly as he does or does not manufacture the books, magazines, or other printed matter which he publishes. But the mere fact that he is a publisher does not compel the inference that he is a manufacturer, but the character of the work done in the operation of his publishing business does. So that while the appellant may be properly classified as a publisher, that fact alone is not sufficient to characterize his business as manufacturing, for that must be determined not by the name given the business but by the character of the work done in the course of its operation.

In connection with that contention the appellant attempts to establish an analogy between its business and that of a newspaper. But analogies quite as close could be invoked of other industries which have not, so far as we know, ever been thought of as manufacturing in character, such as the business of an advertising agency, which composes and designs advertisements, and has them printed and completed by other agencies, but retains for future use the plates from which the legends and designs are printed, or that of composers of music or authors publishing their own works, who prepare the "copy," edit and revise the proofs of it, but have the work of putting it in final and salable form done by others.

But even if its business could be considered as like in its essential features to that of a newspaper, it does not necessarily follow that it is manufacturing, because a newspaper which merely gathers news and assembles it, together with such other matter as it deems suited to the tastes and demands of its readers, in final form, and then sends it to be actually printed and made ready for sale by others, is not in the

same class as a newspaper which does that work on its own machinery and with its own labor.

It may be conceded, without however so deciding, that the business of printing, binding and preparing for use or sale by manual or mechanical labor, books, pamphlets, forms, stationery and similar articles, is manufacturing, but that concession alone cannot help the appellant, because it does none of those things itself, but has them done by others; and it can only avail the appellant if it be also conceded that in doing that work by the hands of another it does it itself. But such a concession not only involves a palpable fiction, but is contrary to the general rule that, in construing statutes exempting property from taxation, no presumption or intendment in favor of an exemption shall be made unless it is clearly warranted by the letter or the spirit of the statute (1 *Cooley on Taxation,* 356; *Broadbent Mantel Co. v. Baltimore,* 134 Md. 90), and that rule prohibits us from extending the scope of the exemption by giving to the language of the statute creating it a construction so forced, strained and unnatural as would be necessary to permit us to hold that one who procures the products which he markets to be manufactured by another, not his agent, manufactures them himself. We have been unable to find any satisfactory authority for such a construction, although it has some support. The leading case cited to sustain it (*Phonograph Co. v. Board of Assessors,* 54 N. J. L. 430) decided that, while the actual work of manufacturing the phonographs referred to in that case was done by the Edison Company, that company did it as the agent for the North American Phonograph Company, and in *Buffalo Refrig. Mach. Co. v. State Board etc.,* 72 N. J. L. 127, it was said that the court, in the phonograph company case, held that the plant of the Edison Company *pro hac vice* became the plant of the phonograph company. But even if we could agree with the conclusion reached in that case, which we are unable to do, it could not benefit the appellant, because it nowhere appears in this case that the persons who did the actual work of manufacturing **the**

appellant's product were its agents, but on the contrary it appears that they were independent contractors. Cases which we regard as more in point are: *People etc. v. Roberts,* 155 N. Y. 1, where it was held that even if it were conceded that the publication of a newspaper was manufacturing, yet where the publisher of such a paper had it printed by other persons and did none of the work itself, that it was not a manufacturer; *State v. Soard's Directory Co.,* 148 La. 1013, where it was held that upon the following facts the publisher of a directory was not a manufacturer: "Defendant employs six men regularly throughout the year, who do clerical work and solicit subscriptions and advertisements for the directory. During the busy season of each year, commencing on the 1st of October, defendant employs about fifty men, who go from house to house ascertaining the name, occupation and street address of every resident of the city. The data thus collected is turned into the office, where experts arrange the names alphabetically and also classify them according to occupation or business. The manuscript thus compiled is turned over to the proprietor of a book printing and binding establishment in the city of New Orleans, who prints and binds the book under the direction and supervision of an officer of the defendant company. Defendant also furnishes the electrotypes and paper and binding material for making the books, and pays the printer and binder a certain rate per hour for part of the work and by the task or job for other parts of the work. Defendant has a copyright on the directories for each year"; and such cases as *Roebling's Sons Co. v. Wemple,* 138 N. Y. 582, where, upon a showing that upon each floor of a storage building occupied by the relator men were employed by it to adapt wire rope manufactured by others for it to certain uses required by its trade, such as attaching loops to the wire rope for various purposes, it was held that the relator was not engaged in the business of manufacturing. See also 37 *Cyc.* 921-922; 38 *Cyc.* 965 etc. 986.

In our opinion, for the reasons stated, the business operated by the appellant is not a manufacturing business within the meaning of the statute and ordinances referred to above, and the appellant is not entitled to the exemption claimed in this case, and the order appealed from must be affirmed.

*Order affirmed, with costs.*