SUBURBAN PROPANE GAS CORPORATION *v.*
TAWES, COMPTROLLER OF THE TREASURY
[No. 158, October Term, 1953.]

*Decided June 24, 1954.*

The cause was argued before BRUNE, C. J., and DELAPLAINE, COLLINS and HENDERSON, JJ.

*Clyde Y. Morris* and *Harrison L. Winter,* with whom were *J. Hodge Smith* and *Miles and Stockbridge,* on the brief, for appellant.

*Charles McC. Mathias, Jr.,* Assistant Attorney General, and *Edward F. Engelbert,* Staff Attorney, Retail Sales Tax Division, Office of the Comptroller, with whom was *Edward D. E. Rollins,* Attorney General, on the brief, for appellee.

COLLINS, J., delivered the opinion of the Court.

This is an appeal by Suburban Propane Gas Corporation, the taxpayer, appellant, from an order of the Circuit Court for Montgomery County, affirming a final determination of the Comptroller of the Treasury, (the Comptroller), appellee.

The taxpayer, a body corporate, filed an application for exemption from the use tax of cylinders, meters, regulators, valves, cylinder caps, delivery truck cylinders, and miscellaneous items used in the sale of propane gas, under the provisions of Code, (1951), Article 81, Section

370 (f), and Rule 62 of the Comptroller relating to the Maryland Retail Sales and Use Tax Acts, which follow:

"370. (Exemptions) The use, storage or consumption in this State of the following tangible personal property is hereby specifically exempted from the tax imposed by this sub-title: * * * (f) Tangible personal property not readily obtainable in Maryland which is stored, used or consumed in this State by a person engaged in the business of rendering services, or manufacturing, compounding for sale, profit or use of any article, substance or commodity, if such tangible personal property enters into the processing of or becomes an ingredient or component part of the product or service which is manufactured, compounded or furnished and the container, label or the furnished shipping case thereof."

"Rule 62: Tangible personal property which is used, stored or consumed in Maryland, the sale of which is not subject to the sales tax, will not be subject to the use tax if: (a) The property is not readily obtainable in Maryland; and (b) *The property is used by a person engaged in the business of* rendering services, or *manufacturing, compounding* for sale, profit or use any article, and (c) The property enters into the processing of or becomes an ingredient or component part of the product or service which is manufactured, compounded or furnished, or the container label, or the furnished shipping case thereof. * * * For the purpose of this rule property will be considered as entering into the processing of the product or service which is manufactured, compounded or furnished if the property is employed either directly or indirectly in the manufacturing, processing or compounding of property for sale or the furnishing of services for sale." (Italics supplied here).

A hearing was held before the Comptroller on the taxpayer's application. The testimony shows that the taxpayer purchases propane in liquid form, a derivative of petroleum, from the original producers thereof and stores the liquid in large storage tanks at principal distribution points. It is admitted that the equipment used and sought to be excepted is not readily obtainable in Maryland. Although as a general rule when the liquid propane is purchased it is already mixed with ethyl mercaptan, an odorant, as specified by the taxpayer, from time to time it adds ethyl mercaptan, when needed, as a safety measure. The taxpayer also mixes methanol with the liquid propane in order to prevent water therein from freezing, while being converted from a liquid to a gaseous form. The liquid propane under variable high pressure is brought by the taxpayer to the consumer's premises, either in tank trucks or in tanks or bottles. When it is delivered by tank trucks it is transferred by a hose to tanks or bottles, owned by the taxpayer and which remain its sole and exclusive property, repaired and maintained by it, on consumer's premises. When it is delivered in bottles, taxpayer's full bottle is exchanged for the empty one. In order to convert the liquid propane into gaseous form, usable by the consumer, the taxpayer has a valve or regulator in the bottles or tanks on the consumer's property. The size of these tanks, bottles, valves, and regulators depends upon the number, location and size of the appliances used by the consumer. The purpose of the valves and regulators is to reduce the pressure on the liquid in the tank or bottle. As the liquid is drawn through the valve or regulator, the pressure being reduced, the liquid propane vaporizes and becomes a gas ready for use. In practically all cases the gas passes through a meter where it is measured and the consumer pays for the amount shown on the meter. The B.T.U. content of the gas is precisely the same when delivered to the consumer as when delivered to the taxpayer. The addition of the methanol does not form a new gas. From these

facts the Comptroller concluded that the adding of the odorant and the anti-freeze and the changing from liquid propane to gaseous propane did not constitute compounding or manufacturing. From that decision the taxpayer appealed under the provisions of Code, (1951), Article 81, Section 348, to the Circuit Court for Montgomery County. The case was there decided on the facts set out in the opinion of the Comptroller. The trial judge found that there was a grave and serious doubt as to whether or not the taxpayer was engaged in "manufacturing" or "compounding", and construing the exemption strictly against the taxpayer, by order affirmed the action of the Comptroller. From that order the taxpayer appeals.

As the taxpayer must show that it manufactures or compounds before it takes advantage of "processing", the question here presented is whether the addition of the odorant and anti-freeze to the liquid propane and the reduction of the pressure on the liquid propane in order to produce gaseous propane, constitutes manufacturing or compounding within the meaning of Section 370 (f), *supra*, and Rule 62, *supra*.

Of course, tax exemption statutes are to be strictly construed in favor of the State. The taxing power is never presumed to be surrendered. Every assertion that it has been relinquished must, to be effective, be distinctly supported by clear and unambiguous legislative enactment. To doubt an exemption is to deny it. *Clarke v. Union Trust Co. of D. C.,* 192 Md. 127, 134, 135, 63 A. 2d 635, and cases there cited; *Comptroller of Treasury v. Crofton Co.,* 198 Md. 398, 404, 84 A. 2d 86; *Shaughnessy v. Linguistic Society,* 198 Md. 446, 450, 84 A. 2d 68, and cases there cited. However, the tax exemption statute should not receive a strained or unreasonable construction that would defeat the purpose of the legislative enactment. *John McShain, Inc. v. Comptroller,* 202 Md. 68, 73, 95 A. 2d 473, and cases there cited.

The taxpayer claims that the adding of the odorant for safety purposes, specified in its purchase, but oc-

casionally done by the taxpayer when found that the odor is not sufficient, and the adding of the methanol to prevent freezing, constitutes compounding within the meaning of the statute. Taxpayer cites no authority for this conclusion but relies on the following definitions:

"Webster's New International Dictionary, (1950 Ed.), defines 'Compound' as: 1. To put together, as elements, ingredients, or parts to form a whole; to combine; unite. 2. To form or make up, as a composite product, by combining different elements, ingredients, or parts; as, to *compound* a medicine."

"Funk & Wagnalls New Standard Dictionary, (1949 Ed.), defines the word 'Compound' as: 1. To make by the intermingling or intimate combination of various elements or ingredients; combine or intermix as to form a composite product; as, to *compound* an ointment; * * * 2. To mix, combine, or put together (various ingredients, elements, or parts), to form a compound substance, word, or thing; as, to *compound* drugs. * * *"

"New Century Dictionary, (1936 Ed.), gives as a definition of the word 'Compound': To put together into a whole; combine; also, to make or form by combining parts, elements, etc."

It was admitted by the vice-president and general manager of the taxpayer that the addition of these two substances did not change the B.T.U. content of the gas and that the gas when delivered to the consumer was substantially the same gas as delivered to the taxpayer. We are therefore of opinion that it is extremely doubtful whether the mixture here meets the definitions of "compounding" relied on by the appellant.

The question is therefore further limited to whether the reduction of the pressure on the liquid propane in taxpayer's containers, in order to produce gaseous pro-

pane for the consumer, constitutes manufacturing within the meaning of the aforesaid legislative enactments.

In the case of *Carlin v. Western Assurance Co.*, 57 Md. 515, relied on by the appellant, this Court held, in a suit on an insurance policy, that a flour mill driven by steam and furnished with a middling purifier, branduster, belt, and other machinery was a manufacturing establishment. That case is hardly helpful here and did not involve a tax exemption. In *Baltimore v. State Tax Commission*, 161 Md. 234, 155 A. 739, cited by the appellant, the only question presented was whether machinery, tools and materials, used in cutting up the hulls of steel vessels into sections suitable in size to be shipped to steel furnaces, were used entirely or chiefly in manufacturing, and thereby entitled to exemption under a Baltimore city tax statute. In holding that the exemption applied, this Court said: "It is one of the stages, and a very important one, in the conversion of a large mass of steel into a variety of useful steel products, and whether the whole transaction is done by one mill or two mills does not affect the application of the statute to one or both." In the instant case, the gas which goes into the consumer's appliances is substantially the same gas which is put in the tank by the taxpayer. In *Baltimore v. Hanover Shirt Co.*, 168 Md. 174, 177 A. 160, also relied on by the appellant, it was held that a shirt manufacturer was entitled to a manufacturer's exemption where large bolts of cloth were spread in great thicknesses, upon which shirt patterns were placed, cut out, stamped as to size and sleeve length, and transferred to a sewing department outside of Baltimore. There, manufacturing was defined as "the making of goods or wares by manual labor or by machinery, especially on a large scale." That case is not helpful here.

In *State v. Alabama Gas Corp.*, (Alabama), 62 S. 2d 454, it was held that regulators, used by gas companies to reduce gas pressure at each house so that the gas was usable, were appliances used for "processing" the gas. No contention was there made that such regulators

were used in compounding or manufacturing. See also *Southern Natural Gas Co. v. Alabama, P.-H., Sales and Use Tax Service,* Paragraph 23,085, decided November 19, 1953, on rehearing at this time. In *State, ex rel, Minneapolis Gaslight Co. v. Lord,* (Minnesota), 157 N. W. 638, the taxpayer was a corporation manufacturing gas. It was there said: "Mains, conduits and pipes used and employed for the delivery of gas to consumers form no necessary part of the plant operated in producing the commodity thus transmitted." To the same effect see *City of Covington v. Covington Gas Light Co.,* 84 Kentucky 94, 2 S. W. 326. In *Forrester v. North Georgia Electric Membership Corp.,* (Georgia), 19 S. E. 2d 158, it was held that an electric transformer which either reduces or steps up voltage did not amount to development or production of electricity, so as to come within a statute which exempted equipment used in the production or development of electricity. In *Kentucky Electric Co. v. Buechel,* (Kentucky), 143 S. W. 58, it was held that, although the machinery and appliances used for generating electricity were covered by a statute exempting manufacturing establishments, the poles, conduits, wires and other property used wholly in distributing electricity were subject to taxation. In *Peoples Gas & Electric Co. v. State Tax Commission,* 238 Iowa 1369, 28 N. W. 2d 799, the taxpayer purchased natural gas. At the station where the gas was delivered to the taxpayer at relatively high pressure by pipe line, plaintiff injected into it an odorant. This pressure was reduced at various points by the taxpayer and delivered to customers at relatively low pressures. The Iowa statute exempted property not readily obtainable when directly used in the actual compounding, manufacturing or servicing of tangible personal property intended to be sold ultimately at retail. The Court here drew an analogy between the distribution of gas and the distribution of electricity and said: "* * * the electric energy is transported at high voltages, not because large blocks or high voltages are usable by consumers, but because

such methods of transportation are the most practical. We hold the poles, wires, transformers and other equipment in the distribution system were not directly used in manufacturing or servicing the electric energy within the meaning of the processing exception. It follows that such materials and equipment were not exempt from the use tax." Further pursuing the analogy between gas and electricity, it was said: "Our conclusion that the poles, wires, transformers, etc., do not service the electric energy is applicable to this contention and results in a holding that the main pipes, valves, regulators, etc., do not service the gas within the meaning of the processing exception. Hence, such materials and equipment were not exempt." In the instant case the gas is also transported under high pressure as a liquid because "such methods of transportation are the most practical."

The case of *Consolidated Gas Co. v. Baltimore,* 62 Md. 588, is very much in point here. There, a Baltimore City ordinance exempted any mechanical tools or implements used in the business of manufacturing in said City from taxation. The question before this Court was whether the gasometers and gas mains or pipes belonging to a company manufacturing illuminating gas in Baltimore were exempt, and whether they constituted part of the machinery actually used in the manufacture of gas. This Court, in holding that this equipment was not exempt under the ordinance, said:

"The gasometer is a huge, air-tight reservoir for the storage of the gas thus produced, and the pressure which is necessary to force the gas through the mains to the consumer. The pressure is generated by the exhauster, which forces the gas through the purifiers into the gasometer. The gasometer being automatic, it rises or falls according to the supply and consumption of gas, the pressure which is communicated to it by the exhauster being regulated and modified by what is called a governor inside of the gasometer. The gas when it passes into the gasometer is

ready for illumination, and all that is required to make it available for use is pressure sufficient to force it through the mains and pipes to the house of the consumer, then coming into contact with the oxygen in the air, it becomes, when lighted, an illuminating gas. This pressure is furnished, as we have said, by the exhauster, communicated to the gasometer and regulated according to the supply and consumption by the governor. If this be so, then it is clear that the gasometer performs no function whatever in the manufacture of the gas itself. It is used merely for the storage of gas, and the pressure necessary for its distribution."

In *Electric Light Co. v. Frederick City*, 84 Md. 599, 36 A. 362, it was held that an electric light plant was not covered by an ordinance exempting from taxation "the machinery and manufacturing apparatus of all manufacturing industries." It was there said: "In speaking of the manufacturing industries of a town or city we would not ordinarily include the electric light plant * * *." In *Comptroller of Treasury v. Crofton Co.*, 198 Md. 398, 84 A. 2d 86, *supra*, it was held that the slate, not readily obtainable in Maryland, used by a construction company in the construction of houses, was not a product of manufacture or manufactured personal property and that, although it might be verbally correct to speak of "manufacturing a house", this was not the common usage.

In *Carroll County v. Shriver Company*, 146 Md. 412, 126 A. 71, the question before this Court was whether a company engaged in canning corn, beans, peas, and succotash was engaged in "manufacturing" within the meaning of an act which authorized the county commissioners to exempt from taxation the tools and machinery of those engaged in manufacturing. This Court there held it was so engaged. It was there said:

"It is difficult to say in the abstract what is and what is not a manufacturing industry. What

might be a manufacturing industry when defined or construed in connection with a statute exempting tools, machines, engines, etc., from taxation, might not be so held when considered in connection with a statute having a different object or purpose. As said in 26 *Cyc.* 524: 'There is of course a multitude of cases in which particular industries and products have been held respectively to be or not to be manufacture, but it would be useless to cite these cases under the names of the industries or products there the subject of decision; * * * since the fact that a given thing or industry has been held to be manufacture under one set of circumstances is no assurance that it will be so held under another.' "

In *H. M. Rowe Co. v. State Tax Commission,* 149 Md. 251, 131 A. 509, it was held that a company which prepared the manuscript for text books but had them printed, electrotyped, bound and delivered by others, was not a manufacturing company within the meaning of an ordinance exempting from taxation machines of manufacturing corporations. In *Arnreich v. State,* 150 Md. 91, 132 A. 430, it was held that one who cleans fish and cuts them in parts for sale, and who, after buying whole carcasses of animals, butchers them for sale was not within the exemption as a manufacturer.

If the rising and falling of pressure in the gasometers in *Consolidated Gas Co. v. Baltimore, supra,* performed no function whatever in the manufacture of gas, it is at least doubtful that the lowering of pressure on the liquid propane in the instant case constitutes manufacturing of gas. To so hold, as pointed out by the appellee, would be to hold that the passage of gasoline through the carburetor of a car causing vaporization was manufacturing. It is difficult to see the difference between the raising and lowering of electrical voltage by a transmitter and the lowering of the pressure on liquid propane. Finding that it is at least doubtful

94

whether the operation in this case amounts to compounding or manufacturing, under the authorities herein cited, the order will be affirmed.

*Order affirmed, with costs.*