SUPERVISOR OF ASSESSMENTS OF WICOMICO
COUNTY, MARYLAND *v.* LODGE #817,
TRUSTEES BENEVOLENT AND PRO-
TECTIVE ORDER OF ELKS

[No. 328, September Term, 1980.]

*Decided April 8, 1981.*

The cause was argued before MORTON, MELVIN and MASON,
JJ.

*Kaye T. Brooks, Assistant Attorney General,* with whom
was *Stephen H. Sachs, Attorney General,* on the brief, for
appellant.

Submitted on brief by *Patrick L. Rogan, Jr.,* for appellee.

MELVIN, J., delivered the opinion of the Court.

This is an appeal of the Supervisor of Assessments of Wicomico County from an Order, dated April 1, 1980, of the Circuit Court for Wicomico County affirming as not "clearly erroneous" an Order of the Maryland Tax Court, dated November 8, 1979. The Tax Court's order, in turn, affirmed a decision of the Property Tax Assessment Appeal Board of Wicomico County exempting from taxation for fiscal year 1977-78 a nine-hole private golf course owned by the appellee, Lodge #817, Trustees Benevolent and Protective Order of Elks (hereinafter referred to as the Lodge) and used solely for the recreational benefit of members and guests of that organization. The golf course covers approximately 57 acres of the Lodge's total acreage of approximately 66 acres located at Salisbury, Maryland.

Article 81, § 8 (Md. Ann. Code, 1957, 1980 Repl. Vol.) subjects all real property, "by whomsoever owned," to assessment and taxation for ordinary taxes in this State "in the county and/or city in which the same is situated." Section 9 of Article 81 provides for various exemptions, *"which exemptions shall be strictly construed."* (Emphasis added.) The Tax Court decided the Lodge was entitled to exemption for its golf course under § 9 (e) of Article 81. In pertinent part § 9 (e) provides exemption for the following:

> "Property owned by . . . any non-profit charitable, fraternal or sororal, benevolent . . . organizations . . .; when any of such property described above is *actually used exclusively for and necessary for charitable, benevolent . . . purposes* (including athletic programs and activities of an educational institution) *in the promotion of the general public welfare of the people of the State.* In the case of fraternal or sororal organizations, the exemption shall extend only to those existing solely for the mutual benefit of their members and beneficiaries, which have a lodge system with ritualistic form of work and a representative form of government, and this term shall not mean any college or high school

fraternities or sororities or other fraternal or sororal organizations with membership which is restricted wholly or largely to students or graduates of educational institutions or professional schools. This exemption shall also extend to *any property used for the purposes set out in this subsection,* which is held by a corporation or association or by trustees for the sole benefit of any of the above organizations. . . ." (Emphasis added.)

In its Memorandum of Grounds for Decision, the Tax Court stated:

"Our reading of this Section indicates that fraternal organizations such as the Respondent enjoy a unique status among the other organizations which the Legislature sought to provide an exemption from real property taxes. We think it is significant to note that by Subsection 2 of 9 (e), the Legislature has distinguished between non-profit charitable, benevolent, educational, literary, and fraternal organizations. This distinction is carried further when the statute defines those fraternal organizations to which the exemption shall extend. As it applies to fraternal organizations, we think that Section 9 (e) evidences the legislative intent or policy, to promote such organizations recognizing that the purpose of such organizations, is as much for the mutual benefit of their members as well as to have some charitable or benevolent purpose.

The undisputed evidence in this case indicates that the Respondents are a fraternal organization which have a lodge system and a ritualistic form of work and the representative form of government. Additionally, the evidence is clear that the Respondents are a non-profit fraternal organization.

Accordingly, for the reasons set forth above, we shall pass an order affirming the decision of the

Property Tax Assessment Appeal Board of Wicomico County."

It thus appears that the Tax Court was of the opinion that simply because the golf course is owned by the Lodge and because the Lodge meets the statutory definition of a non-profit fraternal organization, the golf course property is exempt from taxation. The exemption afforded by § 9 (e), however, is based not only on the type of organization that owns the property but also upon the use made of the property. Thus, in the present case, it was incumbent upon the Lodge to show that the 57 acres for which it claims exemption "is actually used exclusively for and necessary for charitable, benevolent, or educational purposes . . . in the promotion of the general public welfare of the people of the State." Art. 81, § 9 (e).

In *Maryland State Fair v. Supervisor,* 225 Md. 574, 587, 172 A.2d 132, 137-38 (1961), the Court of Appeals cited with approval 2 Cooley, *Taxation* §§ 683-685, agreeing with that authority that

"... even where the exemption is based upon the property being 'used exclusively' for exempt purposes, the general rule is that if the *primary use* to which the property is put is necessary for, or fairly incidental to, the main purposes of the exempt institution, it is immaterial that the property is used secondarily or incidentally for a purpose not embraced within the exemption." (Emphasis added.)

The question in this case is thus whether, under a statutorily mandated strict construction of § 9 (e), the "primary" use to which the 57 acres is put is "necessary for, or fairly incidental to, the main purposes" of the Lodge. It seems to be conceded by the Supervisor that the "main purposes" of the Lodge, as an organization, are charitable and benevolent in nature for the promotion of the general public welfare. Is the operation of a private golf course for the sole benefit of the

Lodge's members and guests from which the general public is excluded "necessary for, or fairly incidental to" those purposes? To state the question is to answer it. As a matter of law the answer is no. As a matter of law the 57-acre golf course is not exempt.

The Lodge does not contend that the golf course exists for any other reason than as a source of recreation for its members and guests. The unique argument is made that, even so, the golf course serves a "benevolent" purpose and therefore qualifies for exemption: ". . . [I]f a fraternal organization supplies a golf course for the use of its members and guests, such is a benevolent purpose for the benefit of the brothers of the fraternal organization. It is supplying a facility for the enjoyment of the brotherhood." This construction ignores the plain language of the statute requiring the property to be used "in the promotion of the general public welfare of the people of the State." Manifestly, a private golf course for members and guests only does not meet that requirement.

The Lodge makes the further argument that the golf course is an "athletic program" conducted by a fraternal organization and therefore should be exempt. The Lodge perceives support for this argument in the parenthetical phrase in the statute after the words "educational purposes":

> ". . . actually used exclusively for and necessary for charitable, benevolent, or educational purposes *(including athletic programs and activities of an educational institution)* in the promotion of the general public welfare of the people of the State. . . ." (Emphasis added.)

We think it is clear, however, that the emphasized parenthetical phrase only manifests a legislative intent to include within the exemption property of *educational* institutions used for athletic programs in connection with the training and education of their students. While property of a fraternal organization used for certain athletic programs, such as little league community youth programs, may well qualify for exemption, we find nothing in the statute

indicating a legislative intent to exempt from taxation a private golf course for the exclusive use of its members and guests.

Article 81, § 229 (o) provides that in appeals from the Tax Court to the circuit court, "the circuit court . . . shall determine the matter upon the record made" in the Tax Court and "shall affirm the Tax Court order if it is not erroneous as a matter of law and if it is supported by substantial evidence appearing in the record." In the present case, we hold that on the record made before it the Tax Court's order is unsupported by substantial evidence and is erroneous as a matter of law. It follows that the circuit court's order affirming the Tax Court must be reversed.

> *Judgment reversed; costs to be paid*
> *by appellee.*