## LODGE #817, TRUSTEES BENEVOLENT AND PROTECTIVE ORDER OF ELKS *v.* SUPER-VISOR OF ASSESSMENTS OF WICOMICO COUNTY, MARYLAND

[No. 45, September Term, 1981.]

*Decided January 12, 1982.*

534

The cause was argued before MURPHY, C. J., and SMITH, DIGGES, ELDRIDGE, COLE, DAVIDSON and RODOWSKY, JJ.

*Patrick L. Rogan, Jr.,* for appellant.

*Kaye Brooks Bushel* and *T. Scott Basik, Assistant Attorneys General,* with whom was *Stephen H. Sachs, Attorney General,* on the brief, for appellee.

MURPHY, C. J., delivered the opinion of the Court.

The question in this case is whether a fifty-seven acre golf course owned by a nonprofit fraternal organization and used exclusively by its members and authorized guests is exempt from real property taxation under Maryland Code (1957, 1980 Repl. Vol.), Article 81, § 9 (e). That section, in pertinent part, exempts from taxation specified charitable, benevolent and educational property as follows:

> "Property owned by . . . (2) any nonprofit charitable, fraternal or sororal, benevolent, educational, or literary institutions or organizations, including public libraries subject to the provisions of Title 23 of the Education Article and nonpolitical, nonstock men's or women's clubs (but not exceeding 100 acres of land outside any city appurtenant to any institution or organization); when any of such property

described above is actually used exclusively for and necessary for charitable, benevolent, or educational purposes (including athletic programs and activities of an educational institution) in the promotion of the general public welfare of the people of the State. In the case of fraternal or sororal organizations, the exemption shall extend only to those existing solely for the mutual benefit of their members and beneficiaries, which have a lodge system with ritualistic form of work and a representative form of government, and this term shall not mean any college or high school fraternities or sororities or other fraternal or sororal organizations with membership which is restricted wholly or largely to students or graduates of educational institutions or professional schools. . . ."

(1)

Lodge #817, Trustees Benevolent and Protective Order of Elks (the Lodge) is a fraternal organization within the ambit of § 9 (e), which owns approximately sixty-six acres of land in Wicomico County. Situated on nine acres of this property are the Lodge Building, a picnic area, a swimming pool, a softball field, a parking area, and a parcel of woodland, which are used, in part, for various charitable activities of the Lodge, including assembling and delivering Christmas baskets to needy families; answering emergency calls for fuel and food; participation in various student scholarship programs; and the sponsorship of a Little League baseball team and a Boy Scout troop. The average annual contribution of the Lodge to charity is less than seven percent of the Lodge's annual budget.

The Elks Lodge Golf Course is exclusively used for the recreational benefit of Lodge members and their authorized guests.[1] The general public is not permitted to use the

---

1. The only exception to this rule is for members of the Delmarva Peninsula Golf Association (DPGA). The Elks Lodge Golf Club is a member

course, nor is it used for any of the Lodge's charitable activities. No funds are generated from the operation of the golf course, which are donated to charity. On the contrary, the Lodge's financial statement for the year ending March 31, 1978, showed a deficit in the operation of the golf course of $2,276.40, requiring a subsidy from the general funds of the Lodge.[2]

### (2)

The Lodge was afforded a property tax exemption under § 9 (e) for its golf course by the county Property Tax Assessment Appeal Board. The Supervisor of Assessments of Wicomico County appealed to the Maryland Tax Court which upheld the exemption.[3] The tax court found that the Lodge was a nonprofit fraternal organization, with a ritualistic form of work and a representative form of government as required for an exemption under § 9 (e). In concluding that the exemption was properly granted under § 9. (e), the tax court said:

> "Our reading of this Section indicates that fraternal organizations such as the Respondent enjoy a unique status among the other organizations which the Legislature sought to provide an exemption from real property taxes. We think it is significant to note that by Subsection 2 of 9 (e), the Legislature has distinguished between non-profit charitable, benevolent, educational, literary, and fraternal organizations. This distinction is carried further when the statute defines those fraternal organizations to which the exemption shall extend. As it applies to fraternal organizations, we think

of the DPGA (which consists of approximately 19 golf clubs). As a member of that organization, it has a reciprocal agreement with other member clubs permitting DPGA members to use the Elks Lodge Golf Course at any time without sponsorship, upon payment of applicable green fees.

**2.** The tax year here involved is 1977-1978.

**3.** The Lodge's other real property is not involved in this case.

that Section 9 (e) evidences the legislative intent or policy, to promote such organizations recognizing that the purpose of such organizations, is as much for the mutual benefit of their members as well as to have some charitable or benevolent purpose."

The Circuit Court for Wicomico County affirmed the tax court's order, holding that it was not "clearly erroneous." The Court of Special Appeals reversed. *Supervisor v. Lodge #817, Order of Elks,* 48 Md. App. 319, 427 A.2d 1022 (1981). It held that the § 9 (e) exemption "is based not only on the type of organization that owns the property but also upon the use made of the property"; and that it was therefore incumbent upon the Lodge to show, as required by § 9 (e), that the golf course "is actually used exclusively for and necessary for charitable, benevolent, or educational purposes . . . in the promotion of the general public welfare of the people of the State." *Id.* at 322. The court said that even if the main purpose of the Lodge, as an organization, was charitable or benevolent in nature for the promotion of the general public welfare, nevertheless, the golf course was used for the sole benefit of the Lodge's members and guests, and was not therefore necessary for, or fairly incidental to the Lodge's charitable or benevolent purposes. The court found no merit in the Lodge's argument that because the golf course serves a "benevolent" purpose for its members and guests, it is per se exempt under the statute. This argument, the court said, ignores the plain language of § 9 (e) which requires that the property, to be exempt, must be used "in the promotion of the general public welfare of the people of the State." *Id.* at 323.

We granted certiorari to consider the important issues of statutory construction raised in the case. We shall affirm the Court of Special Appeals.

(3)

Under the express provisions of § 9 (a) of Art. 81, exemptions from real property taxation "shall be strictly construed." We have said many times that to doubt an

exemption is to deny it. *See Ballard v. Supervisor of Assess.,* 269 Md. 397, 403, 306 A.2d 506 (1973); *Suburban etc. Gas Corp. v. Tawes,* 205 Md. 83, 87, 106 A.2d 119, 121 (1954). This rule of strict construction in favor of the State is not relaxed in favor of charitable or benevolent corporations. *See Clarke v. Union Trust Co. of D.C.,* 192 Md. 127, 134, 63 A.2d 635, 638 (1949).

Eligibility of a nonprofit fraternal organization for a § 9 (e) tax exemption is governed by a two-prong test. First, the fraternal organization must exist "solely for the mutual benefit of [its] members and beneficiaries . . . [and] have a lodge system with ritualistic form of work and a representative form of government . . . ." The Lodge clearly meets this test. The second prong of the § 9 (e) test requires that the property be "actually used exclusively for and necessary for charitable, benevolent, or educational purposes . . . in the promotion of the general public welfare of the people of the State."

The Lodge maintains that its golf course facility satisfies the second prong of the statutory test for a number of reasons. It argues, as it did below, that the golf course qualifies for a § 9 (e) tax exemption because it is owned and used primarily for "benevolent" purposes. It claims that the term "benevolent" has a meaning less encompassing in scope than "charitable" in that it need not embrace almsgiving but only the well-being of others, *i.e.,* in this instance to fulfill the recreational and leisure time interests of the members of the fraternal organization. The Lodge also suggests that the availability of the golf course to its members acts as an inducement to their sponsorship of charitable events which, in turn, promotes the general public welfare of the people of Maryland. Moreover, the Lodge contends that the mere existence of a qualified fraternal organization promotes the public welfare by providing the people of the State with an opportunity to join such organizations, and therefore supports a tax exemption for all property used in the organization's operation. Finally, the Lodge argues that even though the public is excluded from using its golf course, the operation of the course is nevertheless in the general public wel-

fare as a measure retaining and preserving open areas of land dedicated to leisure time activities.

None of these arguments has merit. As previously indicated, the golf course is not used for any charitable events, nor is it a source of revenue for charitable causes. On the record in this case, the golf course is used solely for the enjoyment of Lodge members and, at least for the tax year in question, its maintenance required a subsidy from the general funds of the Lodge.[4] Manifestly, that the Lodge's primary purpose may be benevolent does not per se afford an exemption for all its property. Nor does the mere fact that the Lodge may own property used to promote charitable activities render all its property tax exempt. Under the statute, only that property of the Lodge which is "actually used exclusively for and necessary" for its charitable or benevolent purposes in the promotion of the public welfare is tax exempt. Undoubtedly, as to those members of the Lodge who use the golf course, its purpose is a benevolent one. But the benevolence does not flow to the general public which is prohibited from using the facility. In a nutshell, the golf course is not used, exclusively, primarily or otherwise, for benevolent purposes in the public interest within the contemplation of § 9 (e). As used in the statute, the terms "benevolent" and "charitable" are virtually synonymous and neither encompasses a brand of beneficence or largess from which the public is actively excluded. To afford a tax exemption to the Lodge's golf course in the circumstances of this case would be to require the taxpayers of this State to subsidize private recreational activities in which they are forbidden to participate. Under statutes similar to § 9 (e), the cases uniformly deny a tax exemption to property owned by fraternal or charitable organizations, which is used primarily for social or recreational purposes. *See, e.g., People v. Rockford Lodge No. 64 B.P.O.E.,* 348 Ill. 528, 181 N.E. 432 (1932); *Sahara Grotto & Styx, Inc. v. State Bd. of Tax*

---

4. Even if funds used for charitable purposes were generated from the golf course, our cases make clear that this would not render the property exempt from taxation. *See Ballard, supra,* 269 Md. at 405, and cases there cited; Balto. v. Grand Lodge of Masons, 60 Md. 280, 283 (1883).

*Com'rs,* 147 Ind. App. 471, 261 N.E.2d 873 (1970); *Aerie 1287 Frat. Order of Eagles v. Holland,* 226 N.W.2d 22 (Iowa, 1975); *Clements v. Ljungdahl,* 161 Kan. 274, 167 P.2d 603 (1946); *Manhattan Masonic Temple Ass'n v. Rhodes,* 132 Kan. 646, 296 P. 734 (1931); *Benevolent Ass'n of Elks v. Wintersmith,* 204 Ky. 20, 263 S.W. 670 (1924); *Boston Lodge, No. 10, B.P.O.E. v. City of Boston,* 217 Mass. 176, 104 N.E. 453 (1914); *St. Louis Lodge No. 9 B.P.O.E. v. Koeln,* 262 Mo. 444, 171 S.W. 329 (1914); *Nature Conservancy v. Town of Nelson,* 107 N.H. 316, 221 A.2d 776 (1966); *Brunson v. Rutherford Lodge No. 547, B. & P. O. of Elks,* 128 N.J. Super. 66, 319 A.2d 80 (1974); *Camden Lodge No. 111 v. City of Camden,* 135 N.J.L. 532, 53 A.2d 341 (1947); *People v. Ostrander,* 173 N.Y.S. 356 (1918); *Wilson v. Licking Aerie No. 387, F.O.E.,* 104 Ohio St. 137, 135 N.E. 545 (1922); *North Gates Elks Club v. Garner,* 496 S.W.2d 887 (Tenn. 1973); *B.P.O.E. Lodge No. 151 v. City of Houston,* 44 S.W.2d 488 (Tex. Civ. App. 1931); *Baker v. One Piece of Improved Real Prop., etc.,* 570 P.2d 1023 (Utah, 1977).

Nothing in *Md. State Fair v. Supervisor,* 225 Md. 574, 172 A.2d 132 (1960), supports the Lodge's position. In that case, the question was whether the Maryland State Fair and Agricultural Society, Inc., a nonprofit educational and charitable institution, which annually conducts the Maryland State Fair, was exempt from real property taxation on that portion of its property, including improvements, used for the midway and to conduct horse racing. The statute then in effect, an earlier and less exacting version of what is now § 9 (e),[5] exempted property of charitable, fraternal, benevolent or educational institutions or organizations which was "necessary for [their] respective uses." The Supervisor claimed that the property was not "reasonably necessary" for the charitable and educational work of the Society. The Court disagreed, concluding that the Fair, in its entirety, operated exclusively as an educational enterprise of which the midway and race track property were integrated parts. The Court said:

---

5. *See* Code (1957, 1960 Supp.) Art. 81, § 9 (7) and (8).

"[T]he land where the midway operates and where the horse racing is conducted (including the buildings thereon) is used directly for the purposes and in the operation of the Fair. It is not property used merely as a source of revenue. These facts, we think, clearly show that the uses of the land and buildings where the horse racing is conducted and the land used for the midway are reasonably necessary for the educational purposes of the Society, and we, therefore, hold that, under Section 9 (7) and (8), it is exempt from paying taxes thereon. . . ." 225 Md. at 589.

In so concluding, the Court, at 587, noted that under tax exemption statutes which require that property be used exclusively for exempt purposes, it is the general rule that if the primary use to which the property is put is necessary for, or fairly incidental to, the main purposes of the exempt institution, it is immaterial that the property is used secondarily or incidentally for a purpose not embraced within the exemption. We think it clear that even applying this rule, the Lodge's golf course could not qualify for an exemption under present § 9 (e) since it is not "actually used exclusively for and necessary for charitable, benevolent, or educational purposes . . . in the promotion of the general public welfare of the people of the State."

## (4)

Finally, we consider the Lodge's argument that the policy of this State, as expressed in Code (1974), § 5-102 of the Natural Resources Article, indicates that the preservation of open areas of land devoted to recreational and leisure uses, such as its golf course, is in the public welfare of the people of the State and hence entitled to a tax exemption. Section 5-102 declares:

"Forests, streams, valleys, wetlands, parks, scenic, historic and recreation areas of the state are basic assets. Their proper use, development, and

> preservation are necessary to protect and promote the health, safety, economy, and general welfare of the people of the state. It is the policy of the state to encourage the economic development and use of its natural resources for the improvement of local economy, preservation of the natural beauty, and promotion of the recreational and leisure interest throughout the state."

Manifestly, § 5-102 constitutes a declaration of policy and has reference to state-owned property, not to privately owned golf courses. This becomes even clearer from the provisions of Art. 81, § 19 (e), which authorize the assessment of golf courses on the basis of such use. Nor do the provisions of Art. 81, § 19A (8) justify exempting the Lodge's golf course from taxation, as it suggests. That section explicitly requires that in order for private property to qualify for a preferential valuation, there must be some limitation on its use, such as an easement conveyed to the nature conservancy or to the government. No such limitation has been imposed on the Lodge's golf course. In any event, none of these sections purport to afford a blanket tax exemption for such property.

Accordingly, we hold that the Lodge's golf course property is not entitled to a tax exemption under the provisions of § 9 (e).

*Judgment affirmed, with costs.*