# BALLARD ET UX. *v.* SUPERVISOR OF ASSESSMENTS OF BALTIMORE COUNTY

[No. 330, September Term, 1972.]

*Decided July 5, 1973.*

398

The cause was argued before MURPHY, C. J., and McWILLIAMS, SINGLEY, SMITH, DIGGES and LEVINE, JJ.

*Ann Llewellyn McKenzie,* with whom was *Leonard J. Kerpelman* on the brief, for appellants.

*E. Stephen Derby, Assistant Attorney General,* with whom was *Francis B. Burch, Attorney General,* on the brief, for appellee.

MURPHY, C. J., delivered the opinion of the Court.

Maryland Code (1957, 1969 Repl. Vol.), Article 81, § 9 (4) provided:

> "The following shall be exempt from assessment and from State, county and city taxation in this

State, each and all of which exemptions shall be strictly construed:

\* \* \*

"(4) *Churches, parsonages, etc.* — Houses and buildings used exclusively for public worship, and the furniture contained therein, and any parsonage used in connection therewith, and the grounds appurtenant to such houses, buildings and parsonages and necessary for the respective uses thereof." [1]

Relying on the above section, and fortified by his belief that "[w]here two or three people. . .are gathered together. . .in the name of Christ, there is the church," [2] the Right Reverend Marlin Bausum Paul Ballard and his wife (appellants) applied for an exemption from assessment and taxation for their property located in Baltimore County and used as their family home, Reverend Ballard's place of business, and place of worship for his congregation. The application for exemption was denied by the assessor. The $10,260 assessment was affirmed by the Appeal Tax Court of Baltimore County and by the Maryland Tax Court; from the final order of the latter, appellants entered their appeal to this Court.

The record before us shows the following undisputed facts. Reverend Ballard is a consecrated bishop of the Evangelical Catholic Community as well as an ordained minister of the Universal Christian Church.[3] He ministers

---

1. This exemption, in revised language, now appears as Article 81, § 9 (a) and (c). Acts of 1972, ch. 350. Section 9 of ch. 350 provides that the act shall be applicable to assessments of property for the taxable year beginning July 1, 1973, and ending June 30, 1974. As the instant appeal concerns an exemption claimed for the year 1971-1972, we express no opinion on the current statute.

2. *See, Matt.* 18:20, "For where two or three are gathered in my name, there am I in the midst of them."

3. Reverend Ballard identified the Evangelical Catholic Community as a worldwide historic episcopate descended from Peter, formally established in India in 1902 by Allrich Vernon Herbert, an English Bishop, with its principal membership in New England; and the Universal Christian Church as a nondenominational Christian church, derived from the Christian

"principally to the unchurched" in his "self-liquidating organization" that attempts to send its members to other churches which will fulfill their needs. The congregation varies and services — including the Baltimore Rite of the Mass, agape meals, private and public confessions, pastoral counseling, youth guidance, marriage ceremonies, prayers for the dead, and healing — are held as needed, approximately three times a week. The Sunday mass, at which attendance varies between five and fifteen, is the only scheduled service.

Reverend Ballard does not confine his view of his ministry to these traditional services, but maintains "our whole life is our religion." He includes within this broader view his commercial undertakings — as a registered mail agent, courier and ghostwriter — noting that the canons of his church require that priests work for a living, there being no paid ministry, no "collections" at services, and no regular contributions for support of the church. Appellants operate a remailing business at their home under the nationally advertised name of Mailco. Reverend Ballard spends three to four hours each day operating this business.

All of these activities are conducted in appellants' home, a one and one-half story bungalow located in a residential neighborhood. The house is legally titled in the name of appellants and not in the name of the church. A small sign on the porch, not legible from the road, identifies the house as Universal Christian Church, the Evangelical Catholic Communion, St. Paul's Oratory. Reverend Ballard described the property as "a rectory with a chapel," the chapel being the 10 foot by 10 foot living room containing a sofa and two chairs. Other rooms in the house include a dining room, kitchen, study, bathroom, and bedroom for appellants' son on the first floor, a finished attic which serves as appellants' bedroom and study, and an unfinished basement which serves as a recreational area and storage space.

Naturalist Church, working to unite Christians sharing common beliefs. The two are apparently connected, Reverend Ballard testifying that "[t]he Evangelical Catholic Community . . . is still under the oversight of the Universal Christian Church since 1966 — corporately . . . ."

There was testimony from Robert L. Joyce, Baltimore County assessor, James Byrnes, Baltimore County technician, and Lieutenant Thomas Kelly, of the Baltimore County Fire Prevention Bureau, to the effect that the property could not be used as a public gathering place under applicable zoning, building, and fire regulations. The house is in an R-6 zone, which is limited to single family dwellings. While a church is a permitted use in such a zone, a change of occupancy permit must be obtained as a prerequisite to such use. From the time they acquired the subject property in 1956 to January 1, 1971, the date of finality in the tax year here involved, appellants have never requested a change of occupancy permit, although Reverend Ballard testified that the property had been used in the same fashion for the past 11 or 12 years.

The Maryland Tax Court, in a Memorandum of Grounds for Decision (Hughes, J.) reasoned:

> "The taxpayer, the Reverend Ballard, testified that in addition to conducting religious activities in his residence he also conducted a mail forwarding business operated under the name of Mailco. This was done on a regular basis (3 to 4 hours each day) and constituted the commercial activities within the household. He further testified that his house was the church itself, which was also the parsonage because he and his wife both lived there. Under the statute in question the religious exemption applies to 'houses and buildings used exclusively for public worship' and any parsonage used in connection with such church. The testimony of the taxpayer himself disqualifies the building as a church since it is not used *exclusively* for public worship and the foundation for exemption as a parsonage does not exist. . . ."

On appeal, appellants propose a different interpretation of the facts, *viz.*:

> "Considering that . . . [Appellants] believe their whole life to be their religion and considering that

the canons of the Church require the priest to earn a living, it would stand to reason that any act of employment by the priest for this purpose would be an act of worship. It would follow that all activities on the premises being forms of worship, the use of the premises would fall squarely under the exemptions provided in Article 81, Section 9 (4)."

From this position, appellants further contend that the refusal to afford them the exemption granted to other churches, many of which engage in secular activities, violates Articles 15 and 36 of the Maryland Declaration of Rights,[4] and the free exercise clause of the First Amendment,[5] and the equal protection clause of the Fourteenth Amendment of the United States Constitution.

Appellee contends that the record contains substantial evidence to support the lower court's conclusion in that: (1) the property is not used *exclusively* or *primarily* as a place of worship, that use being incidental to its commercial and residential use; (2) the property is not used for *public* worship, since it did not have a sign legible from the road, could not legally be used as a public gathering place under applicable fire and zoning regulations, and appellants had not in 16 years sought to have it approved as a public gathering place; (3) the property is not exempt as a parsonage since the condition precedent, namely, a church, is not present. Appellee further contends that the statute, as interpreted by the lower court, is constitutional.

---

4. Article 15 provides in pertinent part:

"and all taxes thereafter provided to be levied by the State for the support of the general State Government, and by the Counties and by the City of Baltimore for their respective purposes, shall be uniform within each class or sub-class of land, improvements on land and personal property which the respective taxing powers may have directed to be subjected to the tax levy . . . ."

Article 36 provides in pertinent part:

"nor ought any person to be compelled to . . . contribute . . . to maintain, any place of worship, or any ministry . . . ."

5. "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof . . . ."

## I.

We think the Maryland Tax Court properly held, on the facts summarized above, that the property was neither a house "used exclusively for public worship" nor a "parsonage used in connection therewith" as those words are used in Article 81, § 9 (4).

Tax exemptions are strictly construed in favor of the State. *Pan American Sulphur Co. v. State Department of Assessments and Taxation*, 251 Md. 620, 629, 248 A. 2d 354, 359 (1968); and *see*, Article 81, § 9, quoted *supra*. This rule requiring strict construction of tax exemptions exists because the taxing power is never presumed to have been surrendered by the State. Therefore, "[t]o doubt an exemption is to deny it." *Suburban, etc. Gas Corp. v. Tawes*, 205 Md. 83, 87, 106 A. 2d 119, 121 (1954). *See also, Macke Co. v. State Department of Assessments and Taxation*, 246 Md. 121, 285 A. 2d 593 (1972); *Perdue, Inc. v. State Department of Assessments and Taxation*, 264 Md. 228, 286 A. 2d 165 (1972). While " . . . tax-exemption statutes are to be strictly construed, . . . a strict construction permits a fair one, so as to effectuate the legislative intent and objectives, and it does not require that an unusual or unreasonable meaning be given to the words used in an exemption statute." *Maryland State Fair v. Supervisor*, 225 Md. 574, 588, 172 A. 2d 132, 139 (1961). Maryland Code (1957, 1969 Repl. Vol., 1972 Cum. Supp.), Article 81, § 8 (1) specifically directs that "[a]ll real property in this State, by whomsoever owned, . . . [shall be subject to assessment and taxation] to the fullest extent possible . . . ." Therefore, except where specifically exempted, every property should carry its fair share of the common tax burden, and no property owner should be forced to pay more than his share because others are paying less. *See, e.g., Sears, Roebuck & Co. v. State Tax Commission*, 214 Md. 550, 136 A. 2d 567 (1957); *Mayor and City Council of Baltimore v. Starr Methodist Church*, 106 Md. 281, 67 A. 261 (1907); *County Commissioners v. Sisters of Charity of St. Joseph*, 48 Md. 34 (1878).

Consistent with these fundamental principles, we have

previously construed the first clause of Article 81, § 9 (4) to exempt from assessment and taxation those houses and buildings used *primarily* as places of public worship. *See, Maryland State Fair v. Supervisor, supra,* 225 Md. at 585-87, 172 A. 2d at 137-38; *Morning Cheer, Inc. v. Board of County Commissioners,* 194 Md. 441, 71 A. 2d 255 (1950). In *Maryland State Fair v. Supervisor, supra,* 225 Md. at 587, 172 A. 2d at 137-38, we cited with approval 2 Cooley, *Taxation* §§ 683-685, agreeing with that authority that

> " . . . even where the exemption is based upon the property being 'used exclusively' for exempt purposes, the general rule is that if the primary use to which the property is put is necessary for, or fairly incidental to, the main purposes of the exempt institution, it is immaterial that the property is used secondarily or incidentally for a purpose not embraced within the exemption."

This construction is but a recognition of reality with respect to the operation of modern churches. As we noted in *Murray v. Comptroller,* 241 Md. 383, 401, 216 A. 2d 897, 907 (1966),

> "It is not disputed that today religious organizations, as a major part of their functions, carry on activities secular in nature, of substantial benefit to the community, such as aid to the poor and aged, day nurseries, care of the sick and efforts to eliminate racial inequalities."

The question is whether such an interpretation of Article 81, § 9 (4) is broad enough to include appellants' use of their property.

The fact that the property is used regularly three to four hours each day for appellants' commercial purposes supports the Tax Court's finding that it is not used primarily for public worship. Further, the property is used as appellants' residence. When these two uses are weighed against the thrice-weekly services attended by the public, we agree with the Tax Court that the primary use of the property does not justify the exemption.

Appellants' position, as we understand it, is that: (1) since the income from the commercial use is applied to maintain the premises for public worship, such use should not disqualify the property from exemption; or, in the alternative, (2) since appellants sincerely believe that their religion is their entire life, all of the uses referred to above constitute acts of public worship within the meaning of Article 81, § 9 (4). We have previously rejected the reasoning of the first contention, holding that property which is used to produce income to support a public worship use or other exempt use is not thereby made exempt itself. *Bullis School v. Appeal Tax Court,* 207 Md. 272, 114 A. 2d 41 (1955); *Mayor and City Council of Baltimore v. Starr Methodist Church, supra; Mayor and City Council of Baltimore v. Grand Lodge,* 60 Md. 280 (1883); *Appeal Tax Court v. St. Peter's Academy,* 50 Md. 321 (1879); *The Redemptorists v. County Commissioners,* 50 Md. 449 (1879); *County Commissioners v. Sisters of Charity of St. Joseph, supra.* Nor do we find merit in the second contention, implying as it does that the Legislature intended the words "public worship" in a chameleonic sense, capable of taking on whatever meaning any person sincerely attributed to them by his personal religious convictions. Such a construction would allow the exception to swallow the rule, creating absurd consequences the Legislature could not possibly have intended. *Coerper v. Comptroller,* 265 Md. 3, 288 A. 2d 187 (1972); *Pan American Sulphur Co. v. State Department of Assessments and Taxation, supra.* While it is true that all religious beliefs stand equal before the law, *McMillan v. State,* 258 Md. 147, 265 A. 2d 453 (1970) and cases therein cited, the Legislature did not exempt property used for acts done pursuant to religious beliefs, but rather, specifically narrowed the exemption to houses used primarily for "public worship." We think it apparent that the Legislature intended those words in their common, ordinary meaning, and that such meaning does not include the operation of a commercial mail forwarding business.

We also agree with the Maryland Tax Court that the plain wording of Article 81, § 9 (4) precludes a finding of

exemption based on use as a parsonage unless there is first a finding of public worship use. Ministers' homes are not exempt *per se;* they qualify for exemption only if they are parsonages for a house of public worship.

## II.

Nor do we believe that appellants have sustained the heavy burden of demonstrating that the exemption is unconstitutional. This exemption has existed in substantially its present form since 1797. Laws of Maryland, Chapter 89 (1797). As stated in *Walz v. Tax Commission,* 397 U. S. 664, 678, 90 S. Ct. 1409, 1416, 25 L.Ed.2d 697, 706-07 (1970):

> ". . . an unbroken practice of according the exemption to churches, openly and by affirmative state action, not covertly or by State inaction, is not something to be lightly cast aside."

Exemptions of a reasonable class of property, in furtherance of the public good, do not offend the uniformity requirements of Article 15 of the Maryland Declaration of Rights. *Williams v. Baltimore,* 289 U. S. 36, 53 S. Ct. 431, 77 L. Ed. 1015 (1933), *Mayor and City Council of Baltimore v. Starr Methodist Church, supra.* That there is no conflict between Article 36 of the Declaration of Rights and Article 81, § 9 (4) is well settled. *Murray v. Comptroller, supra.* The exemption of a *reasonably defined* class of property does not violate the Equal Protection Clause of the Fourteenth Amendment, if such is rationally related to a legitimate state purpose. The classification of Article 81, § 9 (4) allows the exemption to those buildings used *primarily* for *public* worship and denies the exemption to buildings used *incidentally* for *public* worship [6] or *primarily* for *private* worship.[7] We cannot say that such a classification has no

---

**6.** Appellee has suggested as an example of this class "the homes of innumerable devout people who are active in their Church or synagogue and have groups therefrom use their homes regularly to meet."

**7.** Based on appellants' religious convictions — which we do not question — their home may fall into this class.

reasonable relationship to the public good. *See, Murray v. Comptroller, supra.* It has long been recognized that, under such statutes, property does not become constitutionally exempt merely because it is owned by a religious organization or because its use, *e.g.,* the income therefrom, may benefit or support religious purpose. *Gibbons v. District of Columbia,* 116 U. S. 404, 6 S. Ct. 427, 29 L. Ed. 680 (1886); *Mayor and City Council of Baltimore v. Starr Methodist Church, supra.*

Nor do we think the statute, under the consistent construction afforded by our decisions, violative of the free exercise clause of the First Amendment. Under the facts of this case, we fail to see any impingement of appellants' freedom to practice the dictates of their consciences.

> *Order of the Maryland Tax Court affirmed; appellants to pay costs.*