## MORNING CHEER, INC. *v.* BOARD OF COUNTY COMMISSIONERS OF CECIL COUNTY

[No. 77, October Term, 1949.]

442

*Decided February 9, 1950.*

The cause was argued before MARBURY, C. J., DELA-PLAINE, COLLINS, GRASON, HENDERSON and MARKELL, JJ.

*George W. Constable* and *Abraham L. Freedman,* with whom were *Constable & Alexander, Bernard Eskin* and *Wolf, Block, Schorr & Solis-Cohen* on the brief, for the appellant.

*Clarke Murphy, Jr., Special Assistant Attorney General,* with whom was *Hall Hammond, Attorney General,* on the brief, for the appellee.

MARBURY, C. J., delivered the opinion of the Court.

This case comes here from the Circuit Court for Cecil County where it came on appeal from the State Tax Commission. It originated with the County Commissioners of Cecil County, and went from there to the State Tax Commission. Appellant is a non-profit corporation of the Commonwealth of Pennsylvania. The question is whether the appellant should be allowed an exemption for state and county taxes on its buildings and real estate located in Cecil County. An appeal to the Circuit Court was taken under Article 81, Section 194 (a), and is therefore on the question of law only on the transcript of record from the Commission.

Section 7 of Article 81 contains certain exemptions from state, county and city taxation, and it is provided that each and all of these exemptions shall be strictly construed. Subsection (4) reads " (4) Houses and building used exclusively for public worship, and the furniture contained therein, and any parsonage used in connection therewith, and the grounds appurtenant to such houses, buildings and parsonages and necessary for the respective uses thereof." Subsection (7) of Section 7 reads in part as follows: " (7) Buildings, equipment and furniture of hospitals, asylums, charitable or benevolent institutions, no part of the net income of which inures to the benefit of any private shareholder or individual, and the ground, not exceeding one hundred acres in area appurtenant thereto, and necessary for the respective uses thereof." The claim in this case is for an exemption in 1946, and at that time the exemption under sub-section (7) was only 40 acres.

The application made by appellant to the County Commissioners requested an exemption of its real estate under Section 7. This real estate consists of 227.25 acres, of which all but about 35 acres consist of woodland. The

35 acres is developed as a place where members of the public could come and participate in a program of religious activities for a period of about ten weeks during the summer. The program consists of daily religious services, prayer meetings, Bible study and visits by visiting teachers and ministers. Living facilities, including dormitories and cabins for sleeping, and meals are provided for the participants. A charge is made for board and lodging, but no profit is made. The Reverend George A. Palmer, who is a Baptist minister and who is the only salaried officer of the corporation (now receiving $11,700) owns 49 of the 50 shares of stock, and his wife owns the other. If the corporation is dissolved, then, under its charter, each share holder shall be entitled to receive a return of the monies contributed to it by him, and thereafter, after the payment of the debts, the balance is to be contributed to religious organizations selected by the Board of Directors. The corporation was primarily formed for the making of religious radio broadcasts, but the description of what is done by it on the property in Cecil County, as stated by Dr. Palmer, is as follows:

"The Sandy Cove Bible Conference was started in 1946. We purchased property in Cecil County for $90,000, advancing $45,000 cash and giving a purchase money mortgage for $45,000, now reduced to $35,000. We got the cash from mail contributions and from borrowing from other Morning Cheer Funds. There was not a penny in the Bible Conference Fund. We have improved this property by the expenditure of about $84,000. The improvements consists in a tabernacle where services are primarily held, a lodge which has a dining room, living room and bedrooms, a building in which I live and about fifteen or twenty cottages, of which five are in the process of being built. There is also a building for toilet facilities and shower baths. This property is used solely for the Bible Conference, which is operated for about ten weeks in the summer. The property is not used in the winter. Most of our people who come are radio listeners. To the

question whether it is open to the public in the sense that anyone who wants to come to the Conference can do so, I answer that I don't think anybody would want to come there, because we don't permit any smoking in any of the buildings or on the grounds. We have no card parties or anything of that kind. It is a purely spiritual enterprise where people come for spiritual help and guidance. We invite our radio friends, but while all kinds of people listen in, it is hard to conceive of having someone come there who is not interested in our program. This program includes an hour's broadcast daily from 7 till 8. Then there is breakfast. Then the first meeting of the day is from 10 to 11, which is Bible study. From 11 to 12 we have another Bible study period. From 12:30 to 1:00 we have our broadcast again, singing and speaking. The afternoon is for recreation, and then in the evening we have another service for an hour or more.

"The broadcasts originated in the lodge because the tabernacle was not built, and the lines were in the lodge. When the tabernacle is completed, all the broadcasts and other services will be in the tabernacle. Our program is a rather intensified religious program. * * * Now, we have a one-hour service every morning broadcast with the exception of Sunday. And then we have the half-hour Monday through Friday. That is an hour and a half each day of a service, of a daily ministry. And then at Sandy Cove, as we have already mentioned, that is, our Bible Conference, we have the seven to eight hour broadcast, and then the two Bible study hours, then the broadcast from 12:30 to 1:00, and then the evening service, and then possibly prayer meetings before we go to bed. So, you see it is an intensified spiritual program throughout the whole year.

"I guess you could say it was in the nature of a retreat."

The County Commissioners denied any exemption. On appeal to the State Tax Commission, the latter body allowed exemption for one acre, assessed at $40 on which the tabernacle is located, and the assessed value of the

lot on which was the residence used as a parsonage. The Circuit Court affirmed the judgment of the State Tax Commission, but its decision was based upon the fact that the corporation was a foreign corporation and no substantial part of its entire activities were carried on in this State. In the opinion are cited a number of cases from other jurisdictions, which, however, are based upon inheritance taxes. The exemptions here are from real estate taxes, and the real estate is, of course, located in this State. There is no distinction made in the statute between domestic and foreign corporations. In some of our statutes special provisions are incorporated. *Clarke v. Union Trust Co.*, 192 Md. 127, 63 A. 2d 635. The omission here is significant. It seems to us, therefore, that the question here is not whether this is a foreign corporation, but whether its property comes within either of the exemptions set out above.

Appellant contends that it is a charitable or benevolent corporation, and therefore should be exempt under subsection (7). A number of cases have been cited to us on both sides defining what has been held to be a charitable or benevolent corporation in other jurisdictions. Some of these are *Springfield Y.M.C.A. v. Board of Assessors of City of Springfield*, 1933, 284 Mass. 1, 187 N. E. 104; *Board of Assessors of Boston v. Garland School*, 1937, 296 Mass. 378, 6 N. E. 2d 374; *Y.W.C.A. v. Portsmouth*, 1937, 89 N. H. 40, 192 A. 617; *Conrad v. Maricopa County*, 40 Ariz. 390, 12 P. 2d, 613; *Ettlinger v. Trustees Randolph Macon College*, 4 Cir., 31 F. 2d 870; *Y.M.C.A. of·Germantown v. City of Philadelphia*, 1936, 323 Pa. 401, 187 A. 204. The question here, however, is not whether the appellant does charitable work, or whether it is a non-profit corporation, existing primarily on gifts. The exemptions allowed are for property. The question is what are the primary objects for which the property of appellant in this State is used, and this, we think, can be readily ascertained from the above-quoted statement of the President and Pastor. He claims it is primarily devoted to·religious purposes, and the facts he

gives clearly show this to be so. His designation of it as a retreat is perhaps as apt as could be given. It may, of course, be possible to have a religious corporation which is also charitable or benevolent. As a matter of fact, every religious body does charitable and benevolent work, but the State, in determining what property shall be exempt has made a distinction between that of charitable or benevolent institutions and that used for public worship, and we are bound by this distinction. We think it becomes necessary to decide what is the primary use to which the property is put. In the case before us we have no doubt that the use of this property is for public worship and not for charitable or benevolent purposes. Since that is so, appellant is entitled to an exemption under Section 7, subsection (4). The State Tax Commission was, therefore, correct in its decision on this particular point.

We think, however, the situation, with respect to the appellant's property, is different from that of an ordinary church and parsonage. In this case, the entire amount of the cleared land is clearly necessary for the use of the buildings and public worship, and the residence of the pastor. The grounds appurtenant, therefore, to these buildings, are not limited to one acre around the church and the lot and residence used as a parsonage. We think the exemption should extend to the cleared land which is used for the purposes set out in the statement of the President of the appellant, above quoted. That includes about 35 acres. There is no dispute as to the facts and this question is, therefore, a question of the application of the law to these facts and whether the State Tax Commission erred in limiting the exemption as it did. We think it did. The order of the lower court will be reversed and the case remanded to the State Tax Commission so that it may allow the appellant exemption for the 35 acres.

*Order reversed with costs.*