## SUPERVISOR OF ASSESSMENTS OF BALTIMORE COUNTY *v.* TRUSTEES OF BOSLEY METHODIST CHURCH GRAVEYARD

[No. 118, September Term, 1981.]

* * *

## SUPERVISOR OF ASSESSMENTS OF BALTIMORE COUNTY *v.* ST. JOHN'S UNITED CHURCH OF CHRIST

[No. 119, September Term, 1981.]

*Decided March 26, 1982.*

The causes were argued before SMITH, ELDRIDGE, COLE, DAVIDSON and RODOWSKY, JJ., and J. DUDLEY DIGGES, Associate Judge of the Court of Appeals (retired), specially assigned.

*T. Scott Basik, Assistant Attorney General,* with whom was *Stephen H. Sachs, Attorney General,* on the brief, for appellant.

Kenneth T. Bosley, in proper person, for appellee Trustees of Bosley Methodist Church Graveyard. *George W. McManus, Jr.* and *John A. Moag* for appellee St. John's United Church of Christ.

DIGGES, J., delivered the opinion of the Court.

These dual tax cases, before us on certiorari issued prior to decision by the Court of Special Appeals, present the common question of whether that portion of real estate owned by a religious organization for use as a caretaker's residence is entitled to an exemption from real property taxation pursuant to Md. Code (1957, 1980 Repl. Vol.), Art. 81, § 9. As the precise statutory language exempting certain church owned property from taxation provides the fulcrum upon which this opinion rests, we here set forth the relevant

provisions of Art. 81, § 9 before further addressing the matter.

(a) Generally; exemptions strictly construed. — The following real and tangible personal property are exempt from assessment and from State, county, and city ordinary taxation, except as otherwise stated, which exemptions shall be strictly construed:

* * *

(c) Churches. — Property owned by a religious group or organization and actually used exclusively for public religious worship, including parsonages and convents, and property owned by any such group or organization and actually used exclusively for educational purposes.[1]

Both actions before us present appeals by the Supervisor of Assessments of Baltimore County from orders entered in the circuit court for that county affirming Maryland Tax Court decisions that each of the church property caretakers' residences involved here is entitled to an exemption from real estate taxation. The first case concerns the property of the Bosley Methodist Church and adjacent graveyard located in Sparks, Maryland. For the taxable year 1977-78, the appellant supervisor granted a tax exemption for 4½

---

1. One of the appellee churches (Bosley Methodist) has a cemetery on its property. As section 9 (d) of article 81 specifically exempts cemetery property, we set it forth as follows:

(d) Cemeteries. — Property owned by persons or religious groups and actually used exclusively for the burial of dead persons, and property owned by a cemetery or mausoleum company and used for the burial of dead persons which company is not operated for pecuniary profit and which does not accumulate profits for any purpose other than the maintenance or improvement of the property. [Code (1957, 1980 Repl. Vol.), Art. 81, § 9 (d).]

However, since both church and church owned graveyard property are tax exempt by virtue of nearly identical operative statutory language, for convenience and in order to avoid repetition, we shall primarily refer to the language of the section 9 (c) church property exemption when determining if caretakers' residences appurtenant to either church or cemetery property are also exempt.

acres of the Bosley Church property encompassing the church building and graveyard. The supervisor, however, denied an exemption for the remaining part of the church realty across the road from the church and graveyard consisting of the caretaker's residence and one acre lot supporting the dwelling. Following appellant's denial of the exemption, the Trustees of Bosley Methodist Church, an appellee here, pursued administrative appeals culminating in proceedings before the Maryland Tax Court in October, 1978. The record developed in that tribunal discloses that the Bosley trustees provide the home, rent free, to the caretaker and his family primarily in order to ensure that someone is present on the premises to furnish security from vandalism. Additionally, the caretaker and his family clean and maintain the property. The caretaker also possesses the keys to the church and opens the building for all the services and activities that take place there. The tax court found that "the subject property is necessary for the support of the church and graveyard belonging to [appellees]," and on this basis, granted the exemption at issue. The circuit court affirmed.

In a similar vein, the dispute in the second case concerns property owned by appellee St. John's United Church of Christ in suburban Baltimore County. St. John's occupies 31.4 acres with a church, parsonage, meeting house and various other buildings including a separate residence for the caretaker of the property. Like that of the Bosley church, the caretaker for St. John's maintains the church and grounds, opens and closes the church, and provides security with his round-the-clock presence. For the taxable year 1977-78, the Supervisor, although recognizing an exemption for the remainder of the St. John's property, sought to tax the caretaker's residence and one acre lot surrounding the home. Following administrative appeals pursued by the church, the matter reached the Maryland Tax Court in October, 1978. That agency, again finding that "the primary use of the subject property 'is necessary for' and 'fairly incidental to' the main purposes of the exempt institution because it is necessary . . . that the [caretaker] be available

twenty-four hours a day and that he be provided a residence," granted an exemption from taxation for the caretaker's dwelling. The Circuit Court for Baltimore County, as it did in the Bosley case, also affirmed this decision.

The Supervisor of Assessments now strenuously urges that the tax court (and reviewing circuit court) erred as a matter of law by disregarding the plain statutory language which exempts only church owned property that is "actually used exclusively for public religious worship ... [or] the burial of dead persons." Moreover, asserts the supervisor, as the operative language of the tax exemption statute was changed by the General Assembly in 1972 and is substantially more restrictive than prior versions, the "necessary property test" (applied by the Tax Court in this case and articulated in prior statutes and opinions of this Court) is now obsolete and inappropriate here. Upon analysis of the unambiguous and narrowly drawn language of the exemption statute at issue, we must agree with appellant and will reverse these twin decisions.

It is now established Maryland law, both by legislative enactment and by prior decisions of this Court, that taxation is the rule with exemption the exception, and that statutes providing for tax exemption are to be strictly construed in favor of the State. See Code, Art. 81, §§ 8 (1), 9 (a); *Ballard v. Supervisor of Assessments,* 269 Md. 397, 403, 306 A.2d 506, 509-10 (1973) (and cases cited). This is so because "the taxing power is never presumed to have been surrendered by the State." *Id.* at 403, 306 A.2d at 509. Churches and other religious institutions, fraternal, benevolent, or charitable groups, therefore, enjoy no inherent right to exemption from property taxation, for all real property within the State is liable to taxation unless it is expressly exempt. Md. Code (1957, 1980 Repl. Vol.), Art. 81, § 8 (1).[2] Thus, to quote a

---

2. Article 81, section 8 (1) reads:

> The following property [unless statutorily exempt] shall be subject to assessment to the owner ... and taxation for ordinary taxes in this State and in the county and/or city specified below:

familiar passage, "[t]o doubt an exemption is to deny it," and every claimed exemption must, to be effective, "be distinctly supported by clear and unambiguous legislative enactment." *Suburban, Etc. Gas Corp. v. Tawes,* 205 Md. 83, 87, 106 A.2d 119, 121 (1954). Nevertheless, while tax exemption statutes are to be strictly construed, this principle permits a fair interpretation in order to effectuate the legislative purpose, and "it does not require that an unusual or unreasonable meaning be given to the words used in an exemption statute." *Md. State Fair v. Supervisor,* 225 Md. 574, 588, 172 A.2d 132, 139 (1961). It is with these principles in mind that we approach the business of interpreting the tax exemption statute before us.

Sections 9 (c) and (d) of Article 81 are a relatively recent legislative product, having been enacted in 1972,[3] and the appellate courts of this State have not until now been called upon to specifically discern the scope of these new tax exemption provisions.[4] Moreover, as we determine in this opinion that the repeal and reenactment of the section 9 (c) and (d) property tax exemption represents a basic, substantive change which significantly narrows the range of exempt property (rather than merely restating antecedent law), decisions of this Court interpreting prior versions of the tax exemption statute are not dispositive of the question presented here. *See, Lodge #817 v. Supervisor,* 292 Md. 533,

---

(1) Real property. — All real properties in this State, by whomsoever owned, including that owned or leased by the United States, or any department or agency of the United States, to the fullest extent possible under the Constitution of the United States and laws of the United States pursuant thereto and in conformity therewith, in the county and/or city in which the same are situated.

Bosley's suggestion that any tax levied on church property violates the first amendment is groundless and merits no further comment.

3. See 1972 Md. Laws, c. 350.

4. *C.f.,* Supervisor v. Vestry, Salisbury Parish, 48 Md. App. 131, 425 A.2d 1383 (1981), where the intermediate court, quoting the current version of section 9 (d), reversed a tax court decision holding that property used as a cemetery caretaker's residence was exempt from taxation. The reversal by the Court of Special Appeals, however, was expressly grounded on the absence of any factual basis in the record for the tax court decision; the legal issue of the scope of the section 9 (c) and (d) exemptions was not specifically reached.

540-541, 439 A.2d 591 (1982). Compare *Supervisor v. Peter & John Radio,* 274 Md. 353, 335 A.2d 93 (1974); *Md. State Fair v. Supervisor,* 225 Md. 574, 172 A.2d 132 (1961); *Morning Cheer v. Co. Com'rs,* 194 Md. 441, 71 A.2d 255 (1950).

Upon commencing our interpretive task in this case, we must, of course, begin with an examination of the operative words of the statute. In doing so, we find an enactment which, contrary to prior versions, is quite tightly drawn. At this juncture, it is important to directly compare the pertinent language of the predecessor version of the church property exemption with the newly enacted statute and to keep this juxtaposition in mind as we consider the arguments presented here. Md. Code (1957, 1969 Repl. Vol.), Art. 81, § 9 (4) provided an exemption for:

> (4) Churches, parsonages, etc. — Houses and buildings used exclusively for public worship, and the furniture contained therein, and any parsonage used in connection therewith, and the grounds appurtenant to such houses, buildings and parsonages and necessary for the respective uses thereof.

Code (1957, 1980 Repl. Vol.), Art. 81, § 9 (c) currently reads as follows:

> (c) Churches. — Property owned by a religious group or organization and actually used exclusively for public religious worship, including parsonages and convents, and property owned by any such group or organization and actually used exclusively for educational purposes.

Under the current section 9 (c) exemption, therefore, four requirements must be met: first, the property must be "owned by a religious group or organization;" second, the property must be used for "public religious worship;" third, the exempt use must be "actual;" and fourth, the exempt use must be "exclusive."

The record discloses that no public religious worship was ever conducted on the two properties in question, nor, in the case of the Bosley Church and graveyard, was the real estate allocated to the caretaker's residence ever used for burial purposes. The tax court exempted the caretaker's residences solely because it found these appurtenant properties to be necessary for the support of the exempt realty. This, in our view, was error, for the unambiguous language of sections 9 (c) and (d), requiring that the property be "actually used exclusively" for exempt purposes, does not authorize an exemption for such ancillary realty.[5]

It is apparent that the section 9 (c) exemption differs from prior versions in several important respects. Initially, we note the insertion of the requirement, not found in the predecessor statute, that the exempt property must be "actually" used for the enumerated exempt purposes. It is generally agreed that the insertion of the term "actually used" in a statute which grants an exemption from taxation based on use of the property significantly limits the range of exempt property. *State v. Ritschel,* 220 Minn. 578, 20 N.W.2d 673, 677-78 (1945); *Immanuel Baptist Church v. Glass,* 497 P.2d 757, 759 (Okla. 1972); *Davies v. Meyer,* 541 S.W.2d 827, 830-31 (Tex. 1976). For example, in *State v. Ritschel, supra,* the Minnesota Supreme Court denied an exemption to property held by a cemetery for intended but not present use as a burial ground. The statute exempted property "occupied exclusively for a cemetery", but had been

---

5. It has been recognized in decisions of this Court interpreting prior versions of the church exemption that where property is used "primarily" for exempt purposes, with only incidental or occasional use for other purposes, the statutory requirement of "exclusive" use was largely satisfied. Ballard v. Supervisor of Asses., supra, 269 Md. at 404, 306 A.2d 506 at 510; Morning Cheer v. Co. Com'rs, 194 Md. 441, 446-47, 71 A.2d 255, 257 (1950); 2 Cooley, *Taxation* § 685 (4th Ed. 1924). However, the propriety under section 9 (c) of taxing church property used primarily for public religious worship (which is also used occasionally for secular activities) is not before us, and we express no opinion here concerning that issue. Rather, this case concerns ancillary property owned by a religious organization which has been factually determined to be "necessary" to maintain admittedly exempt property, yet which is not itself used at all for either "public religious worship" or "the burial of dead persons."

amended to require that this property also be "actually used" for the exempt purpose. 20 N.W.2d at 677. After recognizing the insertion of "actually used" in the statute, the court noted that:

> [t]he plain inference is that the words "actually used" were inserted ... to make plain that use in fact for [exempt] purposes was essential to exemption. Of course, in a philosophical sense the word actually added nothing; a thing is actually used and occupied or it is not used and occupied at all. But the word was used with some meaning, and that meaning, if it can be discovered, must be given to it. This we think can be done. "Actually" is often used with other words as opposed to "constructive" and means "an actual or existing fact," "really," "in fact," and the like. 2 Words and Phrases, Perm.Ed., pp. 257-258. Where a statute granting exemption from taxation of property used for certain purposes is amended by providing that the exemption shall apply to property "actually used" for those purposes, the insertion of the word "actually" before the word "used" evinces an intention that the use must be actual and present.... [20 N.W.2d at 677-78.]

In addition, unlike the predecessor version of the Maryland church property exemption statute which specifically exempted "the grounds appurtenant to such [exempt] houses, buildings, and parsonages *and necessary for the respective uses thereof,*" Code (1957, 1969 Repl. Vol.), Art. 81, § 9 (4) (emphasis added), the current enactment exempts only "property owned by a religious group or organization and actually used exclusively for public religious worship...." Code (1957, 1980 Repl. Vol.), Art. 81, § 9 (c). Significant due to its deletion from section 9 (c) is any specific additional exemption of appurtenant property *necessary* to support the exempt property. Finally, we point out that, contrary to its predecessor which permitted exemption

of property based solely on use without regard to ownership, section 9 (c) requires additionally that the property be owned by a religious group or organization.

The appellee churches, while acknowledging these significant changes in the statute, nevertheless urge that the repeal and reenactment of the entire scheme of property taxation accomplished by Chapter 350 of the 1972 Maryland Laws, including the exemptions discussed here, does not demonstrate any intention "to make serious substantive changes in the religious exemption." Therefore, the argument goes, any property appurtenant to realty exempt from taxation which may be necessary to support the exempt property remains free from tax as it was under the prior statute. We do not agree. The present exemptions from real property taxation embodied in Section 9 of Article 81 were enacted, substantially verbatim, from legislation proposed in 1970 by the Maryland Legislative Council Committee on Taxation and Fiscal Matters. See 1970 Report, Md. Leg. Council Committee on Taxation and Fiscal Matters, Exhibit F, and compare 1972 Md. Laws, ch. 350. That committee received its mandate in part from House Joint Resolution 97 (printed as Joint Resolution 55 appended to 1970 Md. Laws) which recognized "that the State of Maryland is being deprived of much revenue as a result of the fact that non-profit organizations are not taxed," and resolved "[t]hat the Legislative Council is requested to appoint a committee to study the activities of non-profit organizations and the possibility of taxing those organizations . . . ." After analysis of the tax exemption issue, the committee filed its report describing the problem presented as follows:

> Tax exemptions constitute an erosion of the property tax base. For various reasons tax exemptions have been granted, and in recent years in increasing numbers, causing a loss of property tax revenues at the very time when local financial needs are great and the financial burden on taxpayers is heavy. The effect of exemptions is

cumulative; one exemption by itself may appear to be justified, but taken together, the effect of all exemptions is serious.

The compelling factor which must be borne in mind in considering reform of tax exemptions was well expressed in the preface to the comprehensive review of personal property taxation reported by the Committee in 1957: "Our obligation to remove defects in the tax structure, although compelling, will always remain subordinate to the absolute need of maintaining an adequate supply of revenue to the State and local governments." [Report, *supra,* at 93-94.]

The committee, after scrutinizing the then existing statutory scheme of property tax exemptions, had requested its staff to prepare two alternative "rearrangements" of property tax exemptions, one identified as a "housecleaning rearrangement" of exemptions, and the other as a "complete rearrangement." Report, *supra,* at 114. Following a review of the two proposals, the committee recommended adoption of the "complete rearrangement." The General Assembly concurred by repealing the prior property taxation provisions and enacting in their stead the current version which includes the section 9 (c) and (d) property tax exemptions we now consider. This, in our view, manifests a clear legislative design to sweep away prior property tax exemption statutes and to restructure and broaden this State's property tax base by narrowing the range of exempt property. Moreover, the General Assembly, in section 9 (a) of the statute now before us, had codified prior case law and has specifically directed that tax exemption statutes are to be strictly construed. Courts of this State, therefore, are not at liberty to broaden the application of tax exemptions to include property not specifically enumerated in a tax exemption statute. Consequently, we are permitted only to examine whether the appurtenant caretaker's dwellings were "actually used exclusively for public religious worship . . . [or] the burial of

dead persons," and, as concededly they were not so used here, the properties are subject to taxation.[6]

An examination of a related enactment found in Code (1957, 1980 Repl. Vol.), Art. 81, § 12F-9 bolsters our conclusion in this regard. The General Assembly in that statute (effective July 1, 1980) has permitted local taxing authorities to grant a credit against taxation of employee dwellings on cemetery property, and by so doing, the legislature must have recognized that a cemetery caretaker's residence was not itself exempt under the section 9 (d) language — "actually used exclusively for the burial of dead persons." And as section 9 (c) uses the same operative language, that recognition logically encompasses the latter tax exemption provision. The subsequent tax credit enactment provides:

§ 12F-9. Tax Credit for dwelling on cemetery property.

The local governing body, by ordinance or resolution, may grant a credit against local real property taxation for any improvement located on the site of property that is exempt under subsection (d) of § 9 of this article, if the improvement is used as a dwelling by an employee of the owner of the exempt property.

We agree with appellant that it would be completely superfluous for the General Assembly to permit a credit against taxation of cemetery caretaker's residences if, in the legislature's view, such dwellings were already tax exempt

---

**6.** Although not in their briefs, appellees at oral argument pointed to the specific inclusion of parsonages and convents in the 9 (c) exemption as indicating an intent to exempt all residences which may form part of a church owned complex. In our view, however, the legislature, by eliminating the "necessary property" clause from the exemption, has restricted the range of exempt property but has decided that parsonages and convents should nevertheless be exempt, and has explicitly manifested that determination by adding those two types of dwellings to the current version of section 9 (c). If it had intended a more expansive list, certainly the General Assembly would have, at a minimum, used prior to the words "parsonages and convents" the phrase "such as" or a similar term.

under a closely related statute codified in the same article just a few sections away. Consequently, as subsection (c) of § 9 exempts church property using the same language found in the subsection (d) cemetery property exemption, it is manifest that the legislature understands the common operative language of the two section 9 provisions not to exempt appurtenant caretakers' residences.

Accordingly, as we find that the language of section 9 (c) and (d) does not authorize the exemption from real property taxation granted in these cases, we will reverse.[7]

> *In No. 118, judgment of the Circuit Court for Baltimore County reversed.*
>
> *Costs to be paid by appellee.*
>
> *In No. 119, judgment of the Circuit Court for Baltimore County reversed.*
>
> *Costs to be paid by appellee.*

---

7. We note that, based largely on similar language in their constitutions or statutes, other state high courts have found dwellings used to house nonecclesiastical church personnel to be taxable. *See, e.g.,* Harmon v. North Pacific Union Conference Association of Seventh Day Adventists, 462 P.2d 432, (Alaska 1969); In re Walker, 200 Ill. 566, 66 N.E. 144, (1902); Congregation B'Nai Jeshurun v. Board, etc., 301 N.W.2d 755 (Iowa 1981); Kansas City Dist. v. Board of County Com'rs, 5 Kan.App.2d 538, 620 P.2d 344 (1980); Borough of Cresskill v. Northern Val. Evan. Fr. Ch., 125 N.J.Super. 585, 312 A.2d 641 (1973); Congregational K. I. A. P. v. Mayor of the City of New York, 52 Hun. 507, 5 N.Y.S. 608, (1889); Episcopal Parish, etc. v. Kinney, 58 Ohio St.2d 199, 389 N.E.2d 847 (1979); Midtown Church of Christ v. City of Racine, 83 Wis.2d 72, 264 N.W.2d 281 (1978).