469 A.2d 858

SUPERVISOR OF ASSESSMENTS OF HOWARD COUNTY

v.

Philip CARROLL.

No. 34, Sept. Term, 1983.

Court of Appeals of Maryland.

Jan. 17, 1984.

T. Scott Basik, Asst. Atty. Gen. (Stephen H. Sachs, Atty. Gen., Kaye Brooks Bushel and Peter W. Taliaferro, Asst. Attys. Gen., Baltimore, on brief), for appellant.

John C. Murphy, Baltimore, for appellee.

Argued before MURPHY, C.J., and SMITH, ELDRIDGE, COLE, DAVIDSON, RODOWSKY and COUCH, JJ.

SMITH, Judge.

In this case we shall address the issue left open in *Warlick v. Supervisor of Assess.*, 272 Md. 540, 544, 325 A.2d 587 (1974), "[w]hether accessory or auxiliary structures on a farm, occupied by farm employees, need necessarily be assessed [on the basis of the exemption for farmland]." Under the circumstances in this case, we conclude that as a matter of law the residences here involved are not entitled to the exemption. Hence, we shall reverse the holding of the Court of Special Appeals in its unreported opinion in *Supervisor of Assessments of Howard County v. Philip Carroll*, No. 324, September Term, 1982, filed January 19, 1983, and thus, ultimately, the decision of the Tax Court.

The facts which we shall recite are gleaned primarily from an agreed statement of facts filed pursuant to Maryland Rule 828 g. This case concerns two tracts of farmland located in Howard County. The Supervisor of Assessments of Howard County assessed on a residential basis the curtilage of each residence located on those tracts. The remainder of the land was assessed on an agricultural basis pursuant to the provisions of Maryland Code (1957, 1980 Repl.Vol.) Art. 81, § 19(b)(1). It states:

"Lands which are actively devoted to farm or agricultural use shall be assessed on the basis of such use, and shall not be assessed as if subdivided, it being the intent of the General Assembly that the assessment of farmland shall be maintained at levels compatible with the continued use of such land for farming and shall not be adversely affected by neighboring land uses of a more intensive nature. The General Assembly hereby declares it to be in the general public interest that farming be fostered and encouraged in order to maintain a readily available source of food and dairy products close to the metropolitan areas of the State, to encourage the preservation of open space as an amenity necessary to human welfare and happiness, and to prevent the forced conversion of such open space to more intensive uses as a result of economic pressures caused by the assessment of land at a rate or level

incompatible with the practical use of such land for farming. The State Department of Assessments and Taxation shall establish criteria for the purpose of determining whether lands which appear to be actively devoted to farm or agricultural use are in fact bona fide farms and qualify for assessment under this subsection. Such criteria shall be promulgated in rules and regulations which shall include, but shall not be limited to, the following:

"(i) Zoning applicable to the land.

"(ii) Present and past use of the land including land under the soil bank provisions of the Agricultural Stabilization Act of the United States government.

"(iii) Productivity of the land including timberlands and lands used for reforestation."

See Annot., 98 A.L.R.3d 916 (1980).

One tract, known as Doughoregan Manor, consists of 2,042.38 acres of land. It contains seventeen residences including the manor house. The assessor assigned five acres of residential curtilage for assessment purposes to the manor house. A gatehouse and three other residences at various locations on the tract were assigned one acre of curtilage each. The gatehouse and one of these other houses were occupied by farm employees who resided there for the purpose, so it was said, of the continued maintenance and operation of the adjacent farmland. Thirteen other residences were situated on the tract in a cluster. The Supervisor allocated five acres as the collective curtilage of all of those houses. Four of them served as residences for farm employees. The second tract consisted of 118.319 acres of land and included three residences. One was occupied by a farm employee who lived there for the purpose of the continued maintenance and operation of the adjacent farmland.

The taxpayer appealed to the Property Tax Assessment Appeals Board of Howard County. The issues presented included that the residences occupied by farm employees were entitled to exemption under § 19(b)(1). The Board

affirmed all of the residential assessments but reduced the amount of some of them. Both parties appealed to the Maryland Tax Court pursuant to Code (1957, 1980 Repl.Vol.) Art. 81, § 229.

Two witnesses appeared before the Tax Court on behalf of the taxpayer—Philip Carroll, who managed the property and who described himself as the remainderman under his father's will, and Barry Morton, an expert agricultural consultant. As the agreed statement of facts puts it, they "testified that it would impede the operation of Doughoregan Manor as a farm to subdivide off any of these homesites." According to the agreed statement of facts there was no evidence that any farm-related activity occurred on these homesites other than the use of seven of them as residences for persons said to work on the farms. No evidence was presented, however, as to the nature of these employees' duties. Those residences not occupied by farm employees were rented. Some were let to Howard County police officers for the salutary effect their presence had on the neighborhood. The land on both farms was zoned so as to require minimum subdivided lot sizes of one acre. The Supervisor of Assessments assessed all of the homesites on a residential basis pursuant to a directive promulgated on September 4, 1979, by the State Department of Assessments and Taxation in its procedures manual.

At an earlier time the land involved here had been a dairy farm. Carroll testified that the residences located on it had been used by those employed on the dairy farm whose continuous presence was necessary to its operation. The dairy farm had proven unprofitable, however, and during the time relevant to this case the land was devoted to cash crops—"corn and some alfalfa hay." Carroll did imply in his testimony that at some time in the future he might go into the beef cattle business and that if so there would be a need for additional farmhands and the use of all the residences as places in which the farm workers could live.

The Tax Court held that each homesite which was occupied by a farm employee qualified for assessment on an agricultural basis as authorized by § 19(b)(1) and should not be assessed on a residential basis. The Tax Court further stated, "Our opinion is buttressed by the fact that large farms such as the subject property before us, cannot be operated without the assistance of employees." It found, however, that each homesite which was occupied by a renter, or which was unoccupied, was residential property and did not qualify for the agricultural use assessment.

The Supervisor of Assessments appealed to the Circuit Court for Howard County. The latter affirmed the Tax Court's decision. The Supervisor then appealed to the Court of Special Appeals, which also affirmed the Tax Court's decision. We granted a writ of certiorari to consider the important public question presented here.

An earlier version of Art. 81, § 19(b)(1) was before the Court in *State Tax Comm. v. Gales,* 222 Md. 543, 161 A.2d 676 (1960). The statute specified that lands "actively devoted to farm or agricultural use" should be assessed on the basis of such use and should "not be assessed as if subdivided or on any other basis." The Court in *Gales* held that the State's constitutional requirement of uniform taxation of land within a taxing district applies to the method as well as the rate of taxation. Because the statute set up a separate classification of land for tax purposes it exceeded the constitutional bounds of Article 15 of the Declaration of Rights. The Court discussed the statute in terms of a partial exemption. It found no basis for allowing the General Assembly to grant such an exemption, noting that the power to grant complete exemptions is not unlimited. 222 Md. at 557, 161 A.2d 676.

The General Assembly responded to *Gales* by proposing a constitutional amendment which ultimately was adopted by the voters. The General Assembly also enacted new legislation contingent on the adoption of the amendment, which was in basically the same form as the present statute.

Judge Horney set forth this history for the Court in *Supervisor v. Alsop,* 232 Md. 188, 192 A.2d 484 (1963):

"What is now Code (1957), Art. 81, § 19(b), as it had been reenacted with amendments by Ch. 680 of the Laws of 1957, was held to be unconstitutional in *State Tax Comm v. Gales,* 222 Md. 543, 161 A.2d 676 (1960), as an attempt to set up a separate classification for land devoted to farm or agricultural use contrary to Art. 15 of the Declaration of Rights. The opinion reported in Volume 222 of the Maryland Reports was not filed until June 13, 1960, after a reargument of the case. But prior thereto, as a result of the publication in the *Daily Record* of February 9, 1960, of an opinion following the original argument (which was subsequently withdrawn), the Legislature promptly rewrote § 19(b) of Art. 81, by Ch. 52 of the Laws of 1960, which became effective June 1, 1960. And, by Chs. 64 and 65 of the Laws of 1960, the Legislature also proposed and the voters ratified on November 8, 1960, amendments to Art. 15 as well as Art. 43 of the Declaration of Rights. Art. 15 as amended permitted separate classification and assessment of land. Art. 43 was so amended as to provide that 'land actively devoted to farm or agricultural use shall be assessed on the basis of such use and shall not be assessed as if sub-divided.' " 232 Md. at 191–92, 192 A.2d 484.

In *Alsop* the Court affirmed a trial court order setting aside the decision of the Tax Court which had denied preferential tax treatment to a landowner. There, as the Court put it, the landowner "bought the farm as a place on which to retire and moved there for 'peace of mind' and 'got it.' " 232 Md. at 190. The owner occupied the main house as his residence. Two tenant houses were rented out to individuals who were in no way connected with the farm. Although previous tenants had operated a dairy farm on the tract, during the period in question the owner merely allowed a neighbor to graze his cattle on the land and to grow hay rent free. The Court said:

"As we see it, the question here is not whether the owner and taxpayer is personally engaged in bona fide farm operation or is permitting a neighbor to use the land for grazing cattle without monetary consideration, but instead is whether the land is actively devoted to a 'farm or agricultural use.' We think it was so used." 232 Md. at 194, 192 A.2d 484.

The applicability of the agricultural exemption to a residence arose in *Warlick*, 272 Md. 540, 325 A.2d 587. Warlick acquired 40.7 acres of land by gift. He built a home and lived on the tract. The house was surrounded by a lawn thought to consist of about one-third of an acre. According to the facts the remaining land "other than fallow fields, marshland and timbered areas, [was] farmed by a tenant." 272 Md. at 542, 325 A.2d 587. The area in question was zoned agricultural. Under the applicable zoning law the minimum lot size was one acre for each residence in that zone. For the tax year in question the homesite was computed to be one acre and assessed as residential. The remainder was separately assessed as farmland. Judge Singley said for the Court:

"[W]e perceive no impropriety or unfairness in the separate assessment of the home site. Had the curtilage surrounding the Warlick residence been more extensive and more pretentious, containing several acres of lawns and gardens, ornamental statuary and perhaps a pool, it would have been manifestly inappropriate to extend to it the preferential tax treatment which is accorded farm property. That Mr. Warlick chose to make other use of his home site compels no different result, because its market value remained unaffected.

"We do not reach the question whether accessory or auxiliary structures on a farm, occupied by farm employees, need necessarily be assessed in a similar fashion." 272 Md. at 544, 325 A.2d 587.

The Court pointed out that "the preferential treatment accorded by Code Art. 81, § 19 is essentially an exemption, and as such must be strictly construed, *Perdue Foods, Inc. v.*

*State Department of Assessments and Taxation,* 264 Md. 672, 288 A.2d 170 (1972)." 272 Md. at 545, 325 A.2d 587.

With regards to tax exemptions this Court has repeatedly limited their application. Specifically in *Perdue v. St. Dep't of Assess. & T.,* 264 Md. 228, 286 A.2d 165 (1972), Judge Digges said for the Court:

"It is fundamental that statutory tax exemptions are strictly construed in favor of the taxing authority and if any real doubt exists as to the propriety of an exemption that doubt *must* be resolved in favor of the State. In other words, 'to doubt an exemption is to deny it.' *Pan Am Sulphur v. State Dep't,* 251 Md. 620, 629, 248 A.2d 354 (1968); *Macke Co. v. State Dep't of Assessments and Taxation,* 264 Md. 121, 285 A.2d 593 (1972); *Suburban, etc. Gas Corp. v. Tawes,* 205 Md. 83, 87, 106 A.2d 119 (1954); *Pittman v. Housing Authority,* 180 Md. 457, 460, 25 A.2d 466 (1942)." 264 Md. at 232–33, 286 A.2d 165.

To like effect, see *Supervisor v. Trs., Bosley Meth. Ch.,* 293 Md. 208, 212–13, 443 A.2d 91 (1982), and *Ballard v. Supervisor of Assessments,* 269 Md. 397, 403, 306 A.2d 506 (1973).

In *Warlick* the Court upheld the decision of the Tax Court. In the present case, however, we are asked to reverse the Tax Court's decision. The basis for judicial review of a decision of the Tax Court is spelled out in Code (1957, 1980 Repl.Vol., 1983 Cum.Supp.) Art. 81, § 229(*o*). A circuit court is to "determine the matter upon the record made in the Maryland Tax Court." It "shall affirm the Tax Court order if it is not erroneous as a matter of law and if it is supported by substantial evidence appearing in the record. In other cases, the circuit court may affirm, reverse, remand, or modify the order appealed from."

The exemption in Art. 81, § 19(b)(1) is for "[l]ands which are actively devoted to farm or agricultural use . . . ." Everyone must have a place of abode, a place to lay his head at night. The use made of the houses here at issue is not one whit different from the use of a home made by a farm employee whose residence is located off the farm nor from

the use made of the houses which are rented out. There is no requirement that these farm employees live on the land rather than at some other location. In short, there is no difference between the use made of these residences and the use made by the tenants who are not farm employees of the other residences not in issue. The use here is residential, not farm or agricultural use. *Cf. Supervisor v. Trs., Bosley Meth. Ch.*, 293 Md. 208, 443 A.2d 91. Hence, the Tax Court erred as a matter of law.[1]

JUDGMENT OF THE COURT OF SPECIAL APPEALS REVERSED AND CASE REMANDED TO THAT COURT FOR PASSAGE OF AN ORDER REVERSING THE JUDGMENT OF THE CIRCUIT COURT FOR HOWARD COUNTY AND REMAND TO THAT COURT FOR FURTHER PROCEEDINGS CONSISTENT WITH THIS OPINION; APPELLEE TO PAY THE COSTS.

---

1.  In the view we take of this case it is not necessary for us to wander off into a discussion, as the parties would have us do, as to when certain regulations relative to assessment of homesites were properly promulgated.

    Current COMAR 18.02.03.04 provides:

    "For each dwelling house located on land for which agricultural assessment is determined applicable, a minimum of 1 acre shall be designated as homesite and assessed at fair market value. If the amount of land serving the dwelling house as homesite exceeds 1 acre, that greater amount of acreage shall be assessed at fair market value."

    This regulation became effective January 1982.